Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 No question has been raised on this record in reference to the original character of the instrument on which the action was founded ¿s a negotiable and commercial paper, nor in reference to the duties and obligations of the parties arising purely from their positions as parties to such a paper. And for aught that the record disoloses, every requirement of the law merchant, with respect to the note, or
 
 *530
 
 ■ with respect to the rights of the endorsers thereof, appears to have been fulfilled. Presentment at maturity and within due time was made at the-Bank.of Columbus, Mississippi, and payment there demanded ; The failure to make payment was followed by regular protest, and by like notice to all the endorsers. The exceptions specifically urged by the deféndant in the court below, and.pressed in his behalf before this court, grow out. of an agreement signe'd by the firm of the Camdens and by the defendants in error at the time that the note of Calhoun was endorsed by the former to the latter, and which agreement, it is contended, bound the defendants in error to undertakings and acts- beyond the usual duties incumbent upon endorsers and holders of negotiable paper, and without the fulfilment of which no right of recovery against the plaintiffs in error could arise.. Before entering upon an examination of this agreement and of the questions which it has given rise to,.it is proper to dispose of an objection by the defendant in the court.below, which seems to have been aimed, at the entire testimony adduced by the plaintiffs, but whether at its competency, or relevancy, or at its regularity merely, that objection nowhere discloses. After each deposition offered in evidence by the plaintiffs to the jury, it is stated, that to the reading of such deposition the defendant, by his counsel, objected, and,that his objection was overruled. A-similar statement is made with regard to the record of the suit instituted in the court of Hinds county against Calhoun, the maker of the note, and offered in this cause as proof of due diligence. With regard to the . manner and the import of this objection, we would remark, that they were- of a kind that should not have been tolerated in the court below pending the trial of the issue before the jury. Upon the offer of testimony oral or written, extended and complicated as it may often prove, it could not be expected, upon the mere suggestion of an exception which did hot obviously cover the competency of the evidence, nor point to some definite or specific defect in its character, that the court should explore the entire mass for the ascertainment of defects whidh the objector himself either would not or could not point, to their view. It would, be more extraordinary still if, under the mask of such an objection, or mere hint at objection, .a party should be permitted in an appellate court to spring, upon his adversary defects which it did not appear he ever relied on; ■ and . which, if they had been openly and specifically all.egéd, might háve been easily cured. ’Tis' impossible that this court can determine, or do more than conjecture, as the objection is stated on this record, whether it applied to form or substance, or how far, in the view of it presented to the court below, if any particularview was so presented',, the court may have been warranted in overruling-it. We must consider objections of this character as vague and.nugatory, and as, if entitled to weight anywhere, certainly, as without weight before .an appellate court.
 

 
 *531
 
 Recurring to the agreement signed by the parties at the time of the transfer of the note, and to the instructions given and refused at the trial, with respect both to that agreement and the proceedings had in fulfilment thereof, wé "will remark, as to the'agreement itself, it' is clear that it bound the endorsees to conditions beyond those which- aré implied in the ordinary transfer and receipt of commercial instruments. Their- obligations, therefore, to these endorsers could by no means be fulfilled .by a compliance with such usual conditions. The language of the agreement is explicit.. The said Dore-mus,-Suydams and Nixon, were, to send the note passed to them to the Commercial .Bank of Columbus, Mississippi, for collection, and ;in the event of its not being paid at maturity, they were to use rea-, sonable and due diligence to collect it of the drawer and two previous endorsers before they were to call .upon the said Camdens, &c., &c. The obligation of the plaintiffs, as endorsees ánd holders, would have been fulfilled by-regular demand, protest, and notice; from these' a right of action would immediately have accrued; But the condition stipulated in the agreement is, that.before they can have any right, to make demand upon their endorsers, théy shall diligently endeavour .to. collect‘of the maker arid previous endorsers. With the view of showing a failure iri the plaintiffs in fulfilling their contract,, and of deducing therefrom their own exemption from responsibility, the- defendants first offered a witness to prove a difference in the practice .prevailing in eastern and western banks with respect to the management of paper deposited with them for collection'; and' inquired of tire witness whether a note presented at a bank for payment , on the last day of grace by a notary public would be considered as having been sent to the bank for collection, within the meaning of the contract. . This, question, on motion of the plaint tiff’s - counsel,-the court refused to. allow, and rejected all testimony by the witness in relation to the practice of banks as to notes deposited for collection, unless the witness could testify as to the practice or Usage of the Commercial Bank of Columbus. The ruling of the court-on this point we think was proper. The note was made payable at the Commercial Bank of Columbus; by the agreement between thje parties it was moreover expressly stipulated, that it- should be sent .to that bank for collection; if, then, any custom or practice other than general commercial usage were to control the management of the note, it was the usage of the. Bank of Columbus, certainly not the particular usage of other banks not mentioned in the contract, and perhaps' never within the contemplation 'of the parties to that contract. The next exception is taken upon an instruction asked of the court to the juiy, that unless it was proved to their satisfaction, that the note was .sent to the Bank of Columbus for collection by .the plaintiffs, they must fipd for the defendant. The court responded affirrnatively to the proposition that the note should have-been .sent to the Bank of Columbus for collection, but declared
 
 *532
 
 its opinion that by presentment and demand of payment of the note at maturity by the plaintiffs at the said bank, within banking hours, so as to make a legal demand on the makers, the requirement of the contract in this particular would be complied with. A nice distinction might be made between the language of the agreement and that of the instruction given upon this point.. The distinction, however, we should deem to be more apparent and verbal than substantial, and not to be applicable either to the intention of the parties, or to the real merits of the case. The note was payable at the Commercial Bank of Mississippi. The maker of the note resided in the county in which the bank was situated; the endorsers Barrett and Tarpley, who were to be looked to for' payment before proceeding against the Camdens, were also residents of the state of Mississippi. Every party'upon the note must be presumed to have been cognisant of jits character, and to have known when and where it was payable; and was bound to. prepare for his respective responsibility arising from his. undertaking. Other .notice than that to which the law entitled him- from his peculiar position upon the note, he had no right to claim. It .would be going too far, then, to imply any other right, or to admit it-upon ground less strong than that of express and un-equivocál contract. The language of the agreement we hold not to amount to .this, and as being satisfied with the interpretation that the note should be regularly presented and payment thereof demanded at the Commercial Bank of Columbus-, simply as -one of the means of collection to be adopted before recourse should be had to the .last endorsers.
 

 But it has been contended, that had the note been placed under the management of the bank itself, notice might have been given by the bank to ¡the maker and prior endorsers, before the
 
 maturity of the-note,
 
 and that, thereby, provision might have been made to meet it when due. . In reply to this argument, it may be said, that the agreement itself expresses no such purpose or object, in requiring the note to be sent to the bank, and we do not think that such'an object is necessarily implied in the requisition. In the next place, there is no proof that the bank would have given notice to the maker and endorsers, previously to the maturity of the note; -noris there any tiling in the record to show that this would have been in-accordance with its practice in similar cases. • Under the silence of the contract itself, and in the absence of proof dehors the agreement, we are not. at liberty to set-up a presumption, which neither the language of the agreement nor justice to the parties imperatively calls for. .
 

 The defendants also excepted to. the opinion of. the court, given upon, a prayer to instruct the jury, that the record of the suit by the plaintiffs, against the maker, and prior endorsers of the note, did not . show due diligence as to those parties. This instruction the court refused, but, in lieu thereof, instructed the jury, that the record was proper ■ evidence to show due diligence on the part of the plaintiff,
 
 *533
 
 and that if they believed, from the evidence submitted in addition to the record, that the endorsers Barrett and Trirpley had left the state of Mississippi, were insolvent, and had left no property in the state at the time Of the judgment in the said record, the plaintiffs were not bound to send executions to the counties in which those endorsers respectively resided at the time when suit was instituted against them.' • This court'can conceive no just .foundation for this exception" to the ruling of the Circuit Court. The condition to which the plaintiff was pledged, was the practice of due, that is, proper, just, reasonable, diligence; not to the performance of acts which were obviously useless, and from which expense and- injury might arise, but from which advantage certainly could not. The diligent . and honest prosecution of a suit to judgment, With a return of
 
 nulla bona,
 
 has. always been regarded as one of the extreme tests of due . diligence.
 

 This phrase, and the. obligation it imports, inay be. satisfied, however,' by other means. The ascertainment, upon correct and suffi- . cient proofs, of entire or notorious, insolvency, is recognised by the law as answering the demand of due diligence, arid as dispensing, under such circumstances, with the more dilatory evidence of a suit; evidence which, in instances that it may be easy to imagine, might . prove prejudicial alike to him Who should exact, and to him who would supply it. Dulany
 
 v.
 
 Hodgkin, 5 Cranch, 333; Violet v. Patten, Ibid. 142; Yeaton
 
 v.
 
 Bank of Alexandria, Ibid. 49. We hold, therefore, that, both as to the instruction refused and as to that which was given upon this prayer, the decision of the Circuit Court-was correct.
 

 We come-now to the last exception taken to the opinion of the Circuit Court upon the points presented to it. The defendant in that court insisted, that, by the -láw of Mississippi, the plaintiffs were entitled to ri recovery of the full. amount • of the note, against the maker rind .endorsers, subject to no set-off between the maker and endorsers; and that, if the. plaintiffs had, by their neglect, permitted a judgment for a smaller amount, the defendant was-discharged from all accountability for the sum thus lost. The court refused so to lay down the law, because the record froth the court, in Mississippi furnished the only evidence to which the instruction prayed for referred, arid no negligence appeared, from the record, in the prosecution of the suit against the defendants thereto. This refusal of the court was clearly right, and the reason assigned for it is quite satisfactory. The question to which the instruction asked was designed to apply, was that of due diligence. The timely and.
 
 bona fide
 
 prosecution, of a suit is, perhaps, the highest evidence of due diligence. If, in the conduct of that suit, the party should be impeded or wronged', by an erroneous decision of the tribunal haying cognisance of his case, that wrong could, on no just principle,rbe imputed to him as a fault. It certainly does not tend to show him to have" been the less diligent
 
 *534
 
 in the pursuit of his claim-; and least of all ehóuld he be prejudiced thereby, when the error insisted on.has been induced by the person who seeks' to avail himself of its existence.
 

 Upon the whole, we consider the rtilings of the Circuit Court, upon the several points before it, to be correct; its judgment is, therefore, affirmed.