## OLIVER v. PHELPS.

1. Exceptions to the charge of a judge should specify what is alleged to be erroneous, and a general exception to the whole charge is irregular, and may be disregarded by the appellate court.

2. In trespass by tenant against landlord for a wrongful distress, the landlord can give the special matter in evidence under the general issue, only when the distress was made upon the demised premises.

3. A parol promise or agreement by the landlord, prior to the execution of a lease, the lease being under seal, that he would send his daughter to the school of the tenant, (the plaintiff,) in connection with proof that the daughter did attend the said school in pursuance of that agreement, may be given in evidence in order to show that the rent had been paid and satisfied.

4. The promise did not bind the landlord, but when carried into effect and the service accepted, it became an accord executed, and amounted to payment.

5. The plaintiff's books of account were competent evidence to prove the amount of the service so rendered.

6. The books of the bank in which both parties kept their accounts, were competent to prove that a check given by the plaintiff to the defendant had been carried to the credit of the latter in their books, and that the money had thus come into his possession.

7. If the ground of objection to evidence it not stated in the bill of exceptions, the court will not reverse therefor if she evidence *could* have been legal for any purpose.

Error to the Supreme Court.

John Phelps brought an action of trespass in the Circuit Court for the county of Essex against Samuel Oliver, for taking and carrying away the goods and chattels of the said Phelps. The defendant pleaded the general issue. At the trial in October term, 1842, before the Chief Justice, the said Phelps proved the taking by the defendant of certain goods and chattels, of the plaintiff, on the 11th of October, 1841, and their value, and rested. The defendant then gave in evidence an indenture of lease, dated March 2d, 1840, executed by and between the said Oliver and Phelps, by which the said Samuel let to the said John certain premises in Rahway, in the county of Essex, for the term of five years from the first day of October, 1839, at the yearly rent of $450, and that on the 11th of October, 1841, the defendant distrained the goods and chattels in the declaration mentioned, for one year's rent. The principal part of the goods were distrained upon the leased premises, the residue were distrained and taken from a store-house about half a mile distant from the leased premises, whither they had been removed by the said Phelps from the leased premises, a day or two before, for the purpose of being put on board of a vessel to be transported to Baltimore. The defendant then further proved the appraisal and sale of the said goods and chattels in pursuance of the said distress, and thereupon rested on his part.

The plaintiff then called Emma Willard, who testified that about the middle of August, A. D. 1839, she went with Mr. and Mrs. John Phelps to look at the premises, that she saw Mr. Oliver there, and heard a conversation between Mr. and Mrs. Phelps and Mr. Oliver in relation to Mrs. Phelps taking the

premises as a female seminary. Phelps, by his counsel, then offered to prove that in that conversation Oliver agreed that the education of his daughter at the said seminary should go toward the payment of the rent, and also to prove that Oliver's daughter was educated at the said seminary, for one year and three quarters, from the commencement thereof. To the admissibility of the evidence so offered the counsel of Oliver objected, and the court overruled the objection: and thereupon a bill of exception was taken by the plaintiff in error to the opinion of the court therein. In the further progress of the trial of the said cause in the said Circuit Court, Phelps, by his counsel, offered in evidence his books of account, and the counsel of Oliver objected to their admission, and the court overruled the objection, and admitted the books in evidence, whereupon a bill of exceptions was taken to the opinion of the court therein.

In the further progress of the trial of the cause in the Circuit Court, Phelps, by his counsel, offered in evidence the books of the Rahway Bank, and the counsel of Oliver objected to their admission, and the court overruled the objection, and admitted the books of the Rahway Bank in evidence, whereupon a bill of exceptions was taken to the opinion of the court therein. After the evidence was closed on both sides, and the cause summed up by counsel, the court charged the jury as follows:

"This is an action for a trespass in which the plaintiff complains that the defendant unlawfully, and with force and arms, took and carried away certain goods and chattels belonging to the plaintiff, and in his declaration particularly mentioned. To this charge the defendant has pleaded not guilty. This issue involves two questions: 1st. Did the defendant take and carry away the goods of the plaintiff? and 2dly. if he did take and carry them away, did he do it unlawfully, and without authority?

On the first question you will have no difficulty. It is admitted that certain goods and chattels of the plaintiff were seized and taken by the defendant. Some of them were taken in and upon the premises then occupied by the plaintiff, and the resi-

due were taken out of a store-house to which they had been sent by the plaintiff for the purpose of being shipped to Baltimore. But then the defendant denies that he took them unlawfully. On the contrary he insists that he took them lawfully, and as a distress for rent due him from the plaintiff. The real issue, therefore, between the parties, at least, so far as relates to the goods seized on the premises occupied by the plaintiff, is whether any rent for which the defendant had a right to distrain, was then due and payable?

I have said that this is the real issue so far as relates to the goods which were seized on the premises, and I said so because as to such part of the goods as were seized by the defendant at the store-house or elsewhere off of the premises, the defendant stands here without any legal excuse, even though you should be of opinion that there was rent due to the defendant, for which he had a right to distrain. The reason of this I will explain to you.

At the common law a defendant could not justify or excuse himself for taking away the goods and chattels of another under the plea of not guilty. If he intended to set up a legal or presumptive right to take them, he was bound to set up his defence by a special plea, and could not give such special matter in evidence under the general issue. But the legislature, by an act passed many years since, in favor of landlords, have enacted that if a landlord is sued in trespass by his tenant for taking goods, he may give in evidence under the general issue that there was rent due him, and that he took the goods as a distress for that rent. But this privilege of the landlord extends only by the terms and by the settled construction of the statute to goods seized on the leased premises. For although by the statute, if goods are clandestinely removed from the premises to prevent a distress, the landlord may follow and seize them for rent within a given time; yet if sued by the tenant for such seizure in an action of trespass, the landlord must plead the matter specially, as at common law. It follows then that as to so much of the goods as was seized by the defendant off of the premises, the plaintiff has sustained his action and is entitled

to your verdict, whatever may be your opinion as to the defendant's right to distrain the rest of the goods. I would advise you, therefore, in the first place to determine, if you can, what goods were brought back by the defendant from the store-house, and to settle in your own minds the value of them. Your next inquiry will then be whether the defendant had a right to take the goods which he found and seized upon the premises.

This, as I have already remarked, depends upon the question whether any rent—not whether any debt, or any balance of account—but whether any rent was then due from the plaintiff, and for which the defendant had a right to distrain.

As to the amount of rent reserved and the terms of payment, both parties are concluded by the terms of the lease, which has been read in evidence. These terms are, that the plaintiff should have the premises for five years, at the annual rent of $450, payable semi-annually, with a stipulation that the plaintiff at any time after two years, upon giving to the defendant a certain notice, might surrender the lease, upon paying the sum of $375. It is not pretended that any surrender was ever made by the plaintiff. On the contrary, he is still the lessee of the premises, and stands bound to the defendant for the accruing rent. In fact, it appears in evidence, the plaintiff made an assignment of the lease, and that the assignee has paid to the defendant all the rent that has accrued since the plaintiff left the premises, so that in truth the $375 never became due to the defendant. But if it had, he could not have distrained for it; it would have been a debt recoverable only in the ordinary forms of law, and not by way of distress.

Was there then any rent due according to the terms of the lease? In order to answer this question satisfactorily, we must recur to the evidence on the one side and on the other in the order in which it was given. The burthen of proof has shifted several times in the progress of this cause. First, it lay on the plaintiff. He was bound to prove the trespass complained of, or in other words to prove that the defendant had taken and converted his goods. The plaintiff having done this, it then becomes incumbent on the defendant to excuse or justify the taking, and for this purpose he produced and read in evidence

the lease from him to the plaintiff, by which it appeared, presumptively at least, that there was one year's rent due to the defendant, on the first day of October, 1841 ; and the defendant further gave in evidence that he seised and sold the goods in question, by way of a distress for that rent.   The production of the lease so far as related to the goods taken on the premises, was all that was necessary on the part of the defendant. However harsh, however irregular or oppressive the defendant's conduct may have been, yet if rent was due to him, the plaintiff as to the goods taken on the premises, cannot maintain this action.   For any irregularity, or unlawful, oppressive proceedings by a landlord, in making a distress for rent, if rent is actually due, the tenant under our statute, can only recover for an injury done him, by an action on the case.   Hence the burthen of proof was thrown back on the plaintiff, and it became necessary for him to shew that he had paid or satisfied the rent, which became due on the first day of October last ; accordingly, he undertook to prove, and insists that he has proved, that that rent was paid—that it was paid by the amount of his bill against the defendant, for the board and tuition of his daughter, amounting to 285 dollars ; and by a check on the Rahway Bank for 165 dollars.   Whether the plaintiff has succeeded in proving payment of the rent in the way just mentioned, or in any other way, is a question entirely for the jury.   That the plaintiff had such a bill against the defendant for the board and tuition of his daughter, and that a check drawn by the plaintiff, payable to the defendant, or bearer, had been passed to the defendant's credit in the Bank, is not denied ; but the defendant denies, that either the school bill, or the check, was ever received or appropriated, or agreed to be received or appropriated by him to the payment of the rent.   This then is the dispute between the parties.   If the defendant did agree that the schooling and board of his daughter should go towards the rent, and if he did receive the check on the same account, why, then the rent was paid, and the defendant was a trespasser, no matter what other claims or demands, legal or equitable, the defendant might have had against the plaintiff, whether for repairs, painting floors, money lent, or any thing else.

What then is the evidence relied on by the plaintiff to prove payment of the rent in the manner just stated? Has he succeeded in proving that the rent was paid? It is not my intention to indicate what answer in my opinion ought to be given to this question. It is my duty to decide what is lawful evidence—yours to say whether it is such as satisfies your minds.

The plaintiff, it is true, must prove payment in money or in something valuable; but he is not confined to one mode of proof or one mode of payment. He may prove it by a witness who was present, by a written receipt, or voucher, by the defendant's admission, by his conduct and conversation, or by any circumstances, which go to establish the fact of payment. So the plaintiff may prove payment in gold or silver, in bank bills, in goods, or in the board and tuition of the defendant's daughter, or in any other valuable service or commodity. How then has the plaintiff sought to prove the rent paid? In the first place he insists, and it is not denied, that he boarded and educated the defendant's daughter for three-quarters of the year, ending on the 1st October, 1841, and furnished her with books and other articles necessary or useful and usual in such schools; and by witnesses and his books of account, the plaintiff further insists he has shewn, by the terms of his school, such board, tuition, &c. amounted to about 285 dollars. But it is no matter how much, or how justly the defendant was indebted to the plaintiff for tuition, or for anything else, unless the plaintiff can shew an agreement or consent, expressed or implied, on the part of the defendant, that the amount of such indebtedness should be allowed as payment, so far as it would go, of the rent due. To do this the plaintiff called a witness, (Mrs. Willard,) and offered to prove by her, that at a conversation between the parties, when they were negotiating the lease, and prior to the execution of it, the defendant said he had a daughter to be educated, that her schooling would go towards paying the rent, and held it out as an inducement to the plaintiff to take the premises.

This evidence was objected to, on the ground that the written lease concluded the parties. That by the legal effect of that, the rent was payable only in money, in gold or silver, and

that neither party could change or give any construction to it by parol evidence of any other or additional agreement prior to its execution. This objection, however, I overruled : not because the rule of law set up by defendant's counsel was not right—for it was right—but because it had no application to the case; the witness was not offered to prove any thing to vary the lease—to add any condition to it, or in the slightest degree to change or explain its terms. On the contrary, the evidence offered was perfectly consistent with the written contract, and only went to show that if defendant had sent his daughter to the plaintiff's school, it was under an expectation that the price of her board and tuition should go towards the rent. I should not trouble the jury with my reasons for admitting this evidence, had not the defendant's counsel, notwithstanding they had taken a bill of exceptions to that decision, have thought proper in summing up the cause, to call it in question, and thus indirectly, at least, make their appeal to you. I see no reason to change my opinion on that point. Suppose you are negotiating with me for the lease of premises in which you propose to keep a dry goods or grocery store. I tell you that all goods that I get at your store for the use of my family, shall be credited on the rent; a lease is signed, and I send to your store from time to time, until I have got goods to the whole amount of rent. Shall I, notwithstanding, levy a landlord's warrant on your whole stock in trade, sell it off, and break you up ? I think not; such an agreement would not compel me to send to your store to get goods in payment of rent; but, in connexion with the fact that I did, after making the lease, send for goods from your store, would be evidence to go to the jury from which they might infer that the goods had been delivered by you and received by me in payment or on account of the rent; and that is all for which the evidence was offered by the plaintiff or admitted by the court.

In further evidence that the defendant had agreed to credit the school bill on the rent, the plaintiff insists that the defendant received from him a check for one hundred and sixty-five dollars, that being the balance due for rent after deducting the school bill. That such a check had been passed to the credit

Oliver v. Phelps.

of the defendant and charged to the plaintiff, in the bank, is not denied; but here again the question arises, did the defendant receive the check either as the balance of rent, or on account of rent? He denies that he did, and insists that he had other claims against the plaintiff, to which he had a right to apply, not only that check, but the amount of the school bill. The burthen of proof undoubtedly lies on the plaintiff to prove that the check was given by him, and received, or ought to have been received, by the defendant, in part payment of the rent. This, however, like all other matters, may be proved by evidence more or less direct; that is, by direct or circumstantial evidence. If, in fact, the defendant had no other lawful claim or demand upon the plaintiff, the question would seem to be at an end; the legal presumption in such case, would be, that it was paid to him for rent, and the law would so apply it. It becomes important, then, for the jury to inquire whether the defendant had at that time, any lawful claim against the plaintiff except for rent. It seems from the evidence in the cause, that the defendant offered the premises, in the condition they were in when the negotiation for a lease took place, at two hundred dollars a year; but purely in consideration of certain alterations and improvements to be made by the defendant, the rent was raised to four hundred and fifty dollars a year, and so stated in the lease. It seems further, that besides the stipulated alterations and repairs, some other work was done on the premises, at the solicitation of the plaintiff and his wife, or of one of them. The question is for you to determine, whether there was any promise or agreement, express or implied, on the part of the plaintiff, to pay for such additional work. The work was done by the landlord on his own premises, and therefore, presumptively, done at his own expense, until the contrary appears. I do not recollect any evidence of an express promise by the plaintiff to pay the defendant for having this extra work done, but there was evidence as to painting the floor, and some other things, that the plaintiff's wife said they must be done, and if the defendant would not pay for doing them, she must, or they, meaning her husband and herself, must or would do it. But

the defendant did pay for all the work. It was done by his own workmen, upon his own credit; they charged him for their work; presented him their bills soon afterwards, and he paid them. Now all this may be true, and yet the plaintiff may be bound to refund him the moneys expended. If any such obligation rested upon the plaintiff, it was incumbent on the defendant to prove it, and it is for the jury to say whether, upon a review of the evidence upon this point, the plaintiff was bound to repay those moneys, or any part of them.

As evidence that there was not any such agreement, it is said that the defendant, long after the money had been paid by him for this extra work, gave the plaintiff a receipt in full, $450, for the first year's rent, and that he never presented to the plaintiff any bill, or made any claim on him for money paid for that work, until after he had seized the plaintiff's goods, and this action had been brought. There may be no evidence that the defendant set up this claim prior to his seizing the goods, and yet he may have done it: but however the facts may be as to that matter, it is only a circumstance leading to a suspicion that the defendant really had no such claim, but not such a circumstance as ought to have much weight, or by any means preclude him from now setting up the claim, if, from the whole evidence in the cause, you think the plaintiff was under any legal obligation to pay for that extra work. In addition to this claim, the defendant has given in evidence a note of the plaintiff for $227. It is sufficient to say in reference to that note, that whatever may be due upon it now, there was nothing due upon it at the time the distress was made. It had not then reached its maturity, and consequently the defendant had no right to apply the check for $165 towards the payment of that note, unless he was expressly directed by the plaintiff to do so.

If, however, the jury believe the defendant had other claims against the plaintiff, besides his claim for rent, then he had a right to apply that check to the liquidation of those other claims, unless the plaintiff gave it to him on account of rent, and for no other purpose. The general rule of law is, that he who pays money has a right to appropriate it in the first instance. If he does not, and the receiver has two or more demands against

him, the receiver may apply it to which he thinks proper. If neither have made any special appropriation of the money, then the jury are to apply it under the evidence in the cause, and the direction of the court.

How this money was paid, and whether any special appropriation of it was made at the time by the plaintiff, is a question for the jury, and in short, the whole question is, whether the rent was or was not paid by the school bill and the check.

In support of the allegation that the rent was paid, the plaintiff relies much on the testimony of Mr. Tunison. So far as his evidence details the circumstances and admissions of the defendant, you must take those conversations and admissions altogether. I do not mean that a jury are bound to believe all that a party says in his own favor, but if he make admissions accompanied with qualifications or explanations obviating their effect, by stating some other facts, the jury must take the whole together, and draw their own conclusions from it.

Finally, If the jury believe that the rent, or any part of it, was due to the defendant, then as to all the goods taken on the premises, they must find for the defendant, however rash or oppressive they may think he acted in the matter. But if the defendant has failed to satisfy your minds that rent was due to him, and that he had a right to distrain, then you must find for the plaintiff for all the goods seised and sold by the defendant. The Legislature has favored landlords, more than any other creditors. It has put the law in his own hands—made him judge and executive officer in his own case—but he must act at his peril, and before he undertakes to make a distress, he ought to be sure that rent is due to him, and that he can prove it beyond a reasonable doubt. If, however, they acted in good faith, and do the tenant as little injury, and put him to as little inconvenience as possible, they ought not to be visited with punitive and exemplary damages, even if it turns out that they were mistaken, and had no right to make a distress. But yet, even in such a case, they ought to be made to pay all that the tenant has lost and suffered by reason of the distress. But on the other hand, if the landlord has not only acted without right, but with a reckless and vindictive spirit—if he rudely and unlaw-

fully breaks in upon his tenant—sacrifices his property—deranges his affairs—interrupts his business, and scatters his family, when in fact no rent is due—a jury ought not only to restore to the tenant the full and fair value of his property, but give him ample compensation for all the painful consequences, and for all the provocations, disappointments and losses, that have resulted from such unlawful seizure. So sensible have been the Legislature of the danger of trusting so violent and summary a proceeding in the hands of the landlord, that by a provision in the act, they have given the tenant an action, by which he may recover against the landlord in case of an unlawful distress, double the value of the goods distrained. The plaintiff in this action has not sued under that section of the act; he has sued only for the trespass; you cannot therefore measure the damages by any such rule—but if you believe the defendant in this cause acted without right, you ought to be governed, as I have stated, by the circumstances of the case, in assessing the plaintiff's damages."

The Supreme Court affirmed the judgment of the Circuit Court, and thereupon the defendant below brought a writ of error into this court. It is unnecessary to set out the assignment of errors at large. Those relied on will sufficiently appear in the opinion delivered. Those assigned upon the charge of the judge were not considered by the court, the alleged errors not having been specifically pointed out on the face of the bill.

*A. Whitehead*, and *W. Halsted*, for plaintiff in error.

*B. Williamson*, and *P. D. Vroom*, for defendant.

The judgment of the Supreme Court was affirmed unanimously.

The opinion of the court was delivered by

CARPENTER, J.. Most of the matters assigned for error upon the charge of the judge, may be passed over without remark. The exception to his charge is general. There is no specifica-

tion on the face of the bill of exceptions, of the particular errors alleged, and it does not appear that on the trial, the matters assigned for error upon this charge, were ever brought to the notice of the judge. It does not appear that his attention was ever called to those parts of his charge now alleged to be erroneous, so that he might, if any error, correct it and obviate the objection. No party ought to be allowed to surprise or mislead his adversary, nor ought he to be allowed, here for the first time, to raise a point which might have been obviated, had it been made in the court below. *Rutter* v. *Chapman*, 8 *M. & W.* 37 ; *Camden* v. *Doremus*, 3 *How.* 530 ; *Smith* v. *Craig*, 2 *Barr.* (*Penn. R.*) 153 ; and cases cited in the opinion of the Chief Justice below. *Spenc. Rep.* 181. Such is the general rule in regard to bills of exceptions, and such an exception in gross to the charge, has in the Supreme Court of this state, as well as elsewhere, been treated as no exception at all. In the late case of *Potts* v. *Clark, Spenc.* 536, on error, the Supreme Court, on this ground expressly refused to consider the assignments of error upon the charge of the judge not specifically pointed out on the face of the bill. So far as it depends upon me, this practice will be adhered to in this court, and on more than one occasion, other judges have given a similar intimation. Without such restraint, bills of exception would be but traps to surprise and mislead an adversary, and not a means for the attainment of justice. Most certainly we ought not under such an exception, in our examination, to go beyond the substance of the charge, and ought to review only those doctrines which formed the direct point in the judgment, and were decisive of the cause.

In regard to so much of the charge of the judge, as relates to the construction of the 13th section of the Act concerning Distresses, (*Rev. Laws.* 203,) if permissible to examine it, we hold his construction to be sound. This section is copied from the 21st section of the statute of 11 *Geo.* 2. *c.* 19, which has always been construed to permit the landlord, when sued in trespass by his tenant, to give the special matter in evidence under the general issue, only when the distress was made upon the demised premises. Although the cases cited upon the English Statute were but *nisi prius* decisions, yet they have been acquiesc-

ed in for many years, and stand unquestioned by any authority which can be produced. This construction was assumed to be law in the late case of *Eagleton* v. *Gutteridge*, 11 *M. & W.* 465, 469. Looking at the words of the statute, they do not seem susceptible of any other construction.

A principal point in this cause, comes up upon exceptions taken to the admission of testimony in relation to an agreement, alleged to have been made by the defendant, that he would send his daughter to the school of the plaintiff, and that the tuition should go on account of the rent : a promise said to have been made prior to the execution of the lease. This evidence was offered in connection with other facts which the plaintiff undertook to prove, as, that the daughter did attend the school of the plaintiff in pursuance of this agreement, &c. It is the competency of this testimony, whether it should have gone before the jury at all, and not its weight, or the credibility of the witnesses, that now becomes the subject of our review. Now the doctrine of accord and satisfaction, or the deliverance and acceptance of any particular thing, (indeed in many cases of any particular sum of money) is not to be questioned at the present day. Such delivery, and acceptance in satisfaction, will be a good defence to an action on a money bond or on a covenant for the payment of money. The point here comes up somewhat differently from the case supposed, but it depends upon the same general principles. The defendant in this action, under the general issue, justified as distraining for rent due and unpaid ; and the plaintiff to rebut this defence, undertook to show that the defendant was not entitled to distrain, because, as he alleged, the rent had been paid. He alleged that in part it had been paid by services, rendered by the plaintiff to the defendant in the tuition of his daughter, given and received in payment and discharge of so much of the rent; and that the balance had been paid by a check on the Rahway bank, received by the defendant, and the amount carried to his credit on the books of the bank. In connection with the offer to prove the amount due for tuition, &c., the plaintiff offered to prove, that prior to the sealing of the lease for the demised premises, the defendant, by way of inducement to the taking of the prem-

Oliver v. Phelps.

ises, agreed or promised that he would send his daughter to the plaintiff's school, and that the tuition should go on account of the rent. It is not perceived that this evidence tended in the least to vary the written contract entered into between the parties. The agreement or promise did not bind the parties. The defendant might, notwithstanding, have relied on the words of his covenant, and have said, pay me the rent reserved in the lawful currency of the country. The contract between the parties was in no wise varied or affected by it, unless they subsequently chose to act upon it and to carry it into effect, when it became an accord executed. But if the defendant made such promise, and then in pursuance of that promise sent his daughter to be educated, thus receiving her tuition in discharge of the plaintiff's indebtedness, why should not this, so given and received, amount to payment? That the promise was before the execution of the lease, is the only circumstance relied upon to distinguish the case from the most ordinary occurrence of payment by service upon express agreement to that effect. We do not see that this circumstance varies the case in the least. It is the services rendered, and their acceptance in satisfaction, that concludes the defendant, and not the mere unexecuted agreement. It is the acceptance in satisfaction, and not the time when the agreement to accept was made, that constitutes the gist of the defence. Many observations have been made upon the weight of the evidence, and it has been urged that the jury were not warranted in the inferences which they were instructed by the judge they might make from the testimony. But this was a matter of fact for the jury to decide. If, however, the judge erred in this matter, in his instructions to the jury, specific exceptions should have been taken, so that we might be able to review those instructions in regard to any matter of law raised by the exceptions. As the case is presented to us, we are of the opinion that the evidence admitted was competent and admissible.

It is assigned for error that the plaintiff's books of account were permitted to go in evidence before the jury. The bill of exceptions simply states that the admission of these books in evidence was objected to, but does not state what they were

offered to prove, nor the grounds of the objection. We are, therefore, left in the dark as to the reasons which influenced the court below in the admission of this testimony. (a) If we consider such an exception at all, and can see any ground upon which the evidence can be legalized, we will not reverse. If illegal as offered, and for the purpose for which offered, but competent and legal for any other purpose, the exceptant should specify the ground of his objection, or he will properly lose the benefit of the exception. If he do not, it will not appear but that the evidence was offered for the purpose for which it would have been competent. Before the court can reverse, the error must be manifest.

The object, as has already been said, for which the books were offered is not stated, and we must look to the case to see if any purpose for which they would have been competent. Taking it for granted that the plaintiff had shewn the promise to receive the tuition in discharge of the rent, and that the daughter had been accordingly sent to the school in fulfillment of this promise, why should he not be permitted to prove the amount of the service by the charges in his ordinary books of account? So also the amount of books and stationery furnished to the daughter, articles necessary for the purpose for which she attended the school, and which, as incidental to tuition, seem to stand on the same footing. Are not charges for tuition, like any other services rendered, the proper subject of charge, in a party's book of original entries? It is not perceived that the admission of the books of account for such purpose and under such circumstances, in any way conflicts the decisions and settled doctrine in this state on the subject.

The admission of the books of the Rahway bank is also assigned for error. Neither the purpose for which offered, nor the ground of objection is stated, and the remarks in regard to the preceding assignment of error are here also applicable. If

(a) See *Camden* v. *Doremus*, 3 *How.* 530, in which case the appellate court disregarded entirely general objections taken to the admissibility of evidence, no reason for the objections appearing in the bill of exceptions. See also *Smith* v *Craig*, 2 *Barr.* 153; *Hinde* v. *Longworth*, 11 *Wheat.* 200; 6 *Cond. Rep.* 271; *Wolverton* v. *Commonwealth*, 7 *Serg. & R.* 276.

any purpose for which competent in this cause, and for which they may have been admitted, then under this bill of exceptions, there can be no error manifest to the court. It was said by the plaintiff below, that the $165 of the rent had been paid by a check of the plaintiff, given to the defendant, deposited and carried to the credit of the defendant on the books of the bank. In connection with and to support such opening, why may not the books of the bank and the account of the defendant be brought forward to prove the actual credit given to the defendant, and that the money had actually gone into his possession by the usual business mode, to wit, by credit given him for the amount of the check? How else could the fact be made to appear? Not by an officer of the bank alone, because the account of the defendant in the books of the bank would be the best evidence of the fact. There is much in the remark that banks may be considered the *agents* of depositors, to a certain extent, in the receiving and paying out of moneys. See remarks of Putnam, J. 3 *Pick.* 108. The competency of the books must of course depend upon the object for which offered, and the circumstances of the case. In *Furness* v. *Cope,* 5 *Bing.* 114, a banker's ledger was held to be competent evidence to shew that a customer had no funds in the banker's hands. If in connection with other testimony the object be to shew, that the amount of a check given by one person to another, had been actually received by the latter, by being carried to his credit on the books of the bank in which he kept his account, and upon which also the check was drawn, it seems to be not only legal and competent, but also the only proof which could ordinarily be given of such a fact. The judgment of the Supreme Court must therefore be affirmed.

*Note.*—-The CHANCELLOR had been of counsel with one of the parties, and the CHIEF JUSTICE and WHITEHEAD, J. had expressed opinions in the Supreme Court: they, therefore, gave no opinion.

CITED *in Perrine* v. *Serrel,* 1 *Vr.* 454; *D., L. & W. R. R. Co.* v. *Dailly,* 8 *Vr.* 528.