## WALLACE VS. THE STATE.

28 531
72 405

PRACTICE: *On what ground judgment of conviction in felonies reversed.*
Under section 332 of the Criminal Code, on appeal from a conviction in a case of felony, no objection to any of the proceedings of the circuit court, which does not come under one of the heads mentioned in section 332, can be relied upon in this court, or made available for the reversal of a judgment of conviction.

ADMISSIBILITY OF TESTIMONY: *Reëxamination of witness.*
The reëxamination of a witness, as to new matter, is within the sound discretion of the court, and will not be questioned here, unless it
, appear that the substantial rights of the party were prejudiced by the refusal.

IRRELEVANT TESTIMONY: *When not ground of reversal.*
Where testimony, which ought to have been excluded from the jury, on account of irrelevancy, is permitted to go to the jury, but such testimony is of such character or nature, as could neither have tended to prove the guilt nor the innocence of the prisoner, a judgment will not be reversed for such an error.

NEW TRIAL: *When not granted on account of newly discovered evidence.*
A new trial will not be granted on the ground of newly discovered evidence, when the newly discovered evidence relates solely to the impeachment of a witness.

Wallace vs. The State.

ADMISSIBILITY OF CONFESSIONS: *Within the province of the judge.*

The admissibility of confessions or admissions, in proof of guilt, is a question wholly within the province of the judge to consider and decide, and when the court has once passed upon the admissibility of evidence relating to a confession or admission of the defendant, going to establish guilt, if admitted, the jury must consider it as complete evidence and cannot exclude it.

CREDIBILITY OF WITNESS: *Determined by jury.*

The determination of the credibility of a witness is to be judged of and determined by the jury, and the jury may base their estimate of the amount of credit which shall attach to the testimony of a witness upon immaterial as well as material facts.

PRACTICE: *When judgment not reversed.*

Where a trial has been properly conducted in other respects, this court will not reverse a judgment of conviction simply because the record fails to show that the court set a day for trial.

APPEAL from *Johnson* Circuit Court.

Hon. H. R. WITHERS, Circuit Judge.

*H. C. Barrow* and *S. R. Allen*, for appellant.

*T. D. W. Yonley*, Attorney General, for appellee.

McCLURE, C. J. Before proceeding to an examination of this case, it may not be amiss to inquire upon what grounds a judgment of conviction in a case of felony may be reversed. Section 332 of the criminal code is as follows:

"A judgment of conviction (in cases of felony) shall only be reversed for the following errors of law, to the defendant's prejudice, appearing upon the record:

"1. An error of the circuit court in admitting or rejecting important evidence.

"2. An error in instructing, or in refusing to instruct the jury.

"3. An error in failing to arrest the judgment.

"4. An error in allowing or disallowing a peremptory challenge.

"5. An error in overruling a motion for a new trial."

Our criminal code is much like that of Kentucky, and the section just quoted, with the exception of the fifth clause, is a literal copy of section 334 of the code of that state. In the case of *Cornelius v. Commonwealth* (15 B. Mon., 544), one of the grounds on which a reversal was asked was, that the court erred in overruling a motion for a new trial. As will be seen, the code did not authorize a reversal of a judgment of conviction, in a case of felony, for any such reason, and in disposing of that ground of error, said: "No objection to any of the proceedings of the circuit court, which does not come under one of the heads mentioned in section 334, can be relied upon in this court, or made available for the reversal of a judgment of conviction." The same question was again raised in the case of *Comely v. Commonwealth* (17 B. Mon., 408), and the language above was reiterated in response thereto.

It is not claimed that the court below erred, "in failing to arrest the judgment," nor is it claimed it erred "in allowing or disallowing a peremptory challenge." This being true, our inquiry must be confined to three propositions: 1. Did the court err "in admitting or rejecting important evidence?" 2. Did the court err "in instructing or in refusing to instruct the jury?" 3. Did it err "in overruling a motion for a new trial?" Under the code, these are the only inquiries to be made on the record before us, and we will take them up in their order.

The seventh ground of a motion for a new trial is, "That the court erred on the trial in permitting the plaintiff, after the examination in chief of Thomas H. Payne and his cross examination by the defendant, to reëxamine the said witness as to new matter, that is to say, as to additional admissions of the defendant stated to have been made to said witness in the prison." The bill of exceptions does not show that any ob-

jection was made to the reëxamination of Payne; nor does it show he was reëxamined at the trial. The reëxamination of a witness, as to new matter, is within the sound discretion of the court, and will not be questioned here unless it appear that the substantial rights of the party were prejudiced by the refusal.

The eighth ground is, "that the court erred on the trial in refusing to exclude from the jury the evidence of Shropshire, Lankford and Bristow."

Shropshire testifies that Wallace told him that there were several persons about Clarksville who had meddled themselves about his business, and he intended to hold them responsible; that Ward, the deceased, resided at Clarksville at the time of this conversation.

Lankford testifies that, in August last, he met the defendant Wallace about four miles east of Clarksville, riding a mule, and that he asked him why he was riding a mule; that he replied he was fattening his horse and that the fun had not commenced yet. Defendant at the time was armed with a double barreled shot gun and a pair of pistols, and said he would not be arrested and would not give the road for any three of them; that there was some kind of process against the defendant at that time, and that he understood him to refer to the officers having the process.

All of this testimony was objected to by the defendant, and the objection overruled by the court, and exception taken. It is irrelevant and ought to have been excluded from the jury, but inasmuch as it neither tended to prove the guilt nor the the innocence of the prisoner, a judgment would not be reversed for such an error.

Bristow testifies that in June last he had a conversation with the defendant, and he was talking of his troubles; said he had a few wild oats to sow, and a few to mow; and when that

was done he did not care what became of him; that he was ready to die, or something to that effect; that Dr. J. P. Mitchell wanted him hung, and that he intended to "go for him;" that Doc. Ward (the deceased) had "shot his mouth off" about the matter, but George Wallace had met him at Flood's saloon and made him take it all back. Defendant also said something about Sykes, and said· he would "go for him;" that he had always looked upon Judge Mears as his friend until he discharged Dudley Turner for shooting his brother George, but he believed he was a snake in the grass, and some day he might or would "go for him;" that he came very near going for Capt. J. C. Hill, but he got off of the track somehow; that Jake Rodgers was a friend to Turner and he intended " to go for him;" that he would get the fattest of them.

All of this testimony, so far as the same relates to any statement made by the defendant in relation to others than the deceased, the defendant objected to, which objection was overruled, and exception taken. The evidence so far as it relates to threats made by the defendant as to Mitchell, Rodgers, Mears, Hill and Sykes, ought not to have gone to the jury, and the court ought to have excluded it, and why it was admitted is beyond our comprehension. Believing as we do that the jury could not have come to any other conclusion, on the facts proven and instructions given, if the entire evidence of Bristow had been excluded, the refusal to exclude is not such an error as would warrant a reversal.

The sixth ground is: "That the court erred on the trial in refusing to allow Thomas H. Payne to state whether he had not, at a time and place mentioned, and before he was called to testify on this trial, made a statement of the whole conversation which occurred between him and the defendant near or at the conrt house yard in the town of Clarksville, on Monday

night preceding the Wednesday on which Ward, the deceased, was shot, and whether he did not give as part of such statement that defendant, in speaking of his intentions of killing, etc., said, before he would be taken he would kill some of them, and that he did not intend to be taken."

It does not appear from the bill of exceptions that Payne was ever asked any such question, or that the court refused to allow it to be asked.

The ninth ground is: "That the court errred in refusing to allow McMurray, on his *voire dire* examination, when offered as a witness on the part of the defendant, to state the whole conversation which it had shown had taken place between said witness, after he was sworn as such, and H. C. Barrow."

There is nothing in the bill of exceptions to show that the defendant ever offered to ask McMurray any questions in relation to a conversation with Barrow, or that the court refused to allow him to ask such question.

The tenth ground is: "That the court erred in rejecting the testimony of Joseph Stewart, John Foley, E. G. Connelly, C. D. Eison, John Danner, William Hutcherson and Mrs. Highland."

The defendant offered to prove by Stewart that about one week after the shooting of Ward, and the next day after the assassination of Mears, one Joseph Thompson, a notorious criminal, who was a few years ago condemned to death, and who escaped from prison, passed by his house, about twenty miles from Clarksville, with a double barrelled shot gun and four pistols, and stated to him that he had had "good luck" in Johnson county in the last few days.

This testimony was irrelevant and properly excluded.

The defendant offered to prove by Hutcherson and Foley that they had a conversation with Payne, and that Payne stated to them that he knew nothing about the killing of

Ward, and that he had no idea who did it; that he did not know of the existence of this testimony at the time Payne testified, and asked that Payne be recalled that he might be questioned in regard to such statements.

The court refused to allow the testimony of either Hutcherson or Foley to go to the jury. The testimony of these witnesses evidently was intended to weaken the testimony of Payne, and it was not admissible until the proper foundation had been laid. The recalling of a witness for the purpose of impeaching him stands upon no higher ground than does the right to recall him for the purpose of reëxamining upon new matter. We have already stated that the recalling of a witness to be examined as to new matter was within the discretion of the court trying the cause. A refusal to recall Payne was not error, nor would it have been error to have recalled him.

The defendant offered to prove by Eison and Danner that on the day on which Ward was shot, Ward and one Barnes had a difficulty, and that Barnes had threatened to kill Ward. If Barnes had been on trial for the killing of Ward, this testimony would have been admissible; as he was not, it was not responsive to the issue then before the court, and was properly rejected.

The defendant offered to prove by Mrs. Hyland that Ward boarded at her house, and that while boarding there Ward came very near being assassinated by some unknown person shooting the said Ward with a shot gun, inflicting wounds from which he came near dying; and that while Ward was lying wounded at her house the threats against his life were numerous, and that she requested him to leave her house for fear he would be assassinated there.

There was no error in refusing to allow this testimony to go to the jury.

The defendant offered to prove by Connelly that Ward, a day or two before he received the wounds from which he died, stated to him that his enemies had been trying to kill him for a long time, but had failed; and that if they did kill him it would take some bigger slugs than they had ever shot him with yet. This testimony was clearly irrelevant, and there was no error in excluding it.

The eleventh ground is, "That the court erred in admitting against the objection of the defendant, the witness Bristow to testify as to threats of the defendant against Mitchell, Sykes, Rodgers, Hill and Mears."

We have already stated, in disposing of the eighth ground of the motion for a new trial, that the court erred in not striking out the testimony relating to these persons; but that such error was not of so glaring a character as to warrant a reversal.

The fifteenth ground is but a restatement of the sixth ground for a new trial, with the addition thereto that Hutcherson and Foley are residents of Johnson county; that he did not know what he could prove by them at the time Payne was on the witness stand, and that if a new trial should be granted he would prove by them that Payne had made the statements to them indicated in the sixth ground for a new trial. We know of no instance where a new trial has been granted where the newly discovered evidence (and this is what the defendant claims it is) related to the impeachment of a witness.

The sixteenth ground is: "That the court erred in excluding the evidence of James Warren and Michael Warren when offered by the defendant to impeach the testimony of Bristow."

It does not appear from the bill of exceptions that the defendant ever offered to introduce either of the Warrens for the purpose of impeaching Bristow, or for any other purpose, or .

that the court prohibited him from so doing, nor was the foundation laid for impeaching him.

The seventeenth ground is: "That he has discovered since the examination of the witness Bristow, whom he was not allowed to recall, that if a new trial should be granted him he could prove by the two Warrens that Bristow had admitted to them he had sworn falsely."

The bill of exceptions does not show any attempt on the part of the defendant to recall Bristow. And what is said in relation to the recalling of Payne, in disposing of the tenth ground for a new trial, and that of the fifteenth, is equally applicable here. In support of the seventeenth ground for a new trial, the defendant proffered to tender the affidavits of the two Warrens, and the court seems to have overruled this ground for the reason that the Warrens would not make the affidavit proffered by the defendant.

Having disposed of all the questions relating to the admission and rejection of testimony, we will examine the grounds of error alleged to have been committed in the giving and refusing to give the instructions asked.

The defendant claims that the court erred in giving to the jury, against the objection of the defendant, the sixth, seventh, ninth, tenth and fourteenth instructions asked by the plaintiff, and that the court erred on the said trial in refusing to give to the jury in the form asked for by the defendant, the fifth, sixth and seventh instructions, and that the court erred in refusing to give, in any form, the twelfth and thirteenth instructions.

The sixth instruction asked by the state, and to which the defendant excepts, is as follows: "If there should appear to be a conflict of evidence, the jury should first inquire whether the apparent inconsistencies may not, without violence, be reconciled, and if not, to what extent and in what particulars

the adverse evidence is irreconcilable, and then, by careful investigation and comparison, reject that which is vicious."

There was much conflicting testimony on the trial, and, in view of this fact, some such instruction was necessary. The instruction is not hypothetical, and it embodies the law applicable to the evidence then before the court.

The seventh instruction asked by the state reads as follows : " In case a reconciliation cannot be made, the jury may disbelieve altogether the testimony on one side or the other, and when testimony is equally balanced in all other respects, a slight degree of interest or connection may be sufficient to turn the scale as to who should be believed."

In the case of *The State v. Nash*, 8 Iredell, 35, the court charged " that the law regarded with suspicion the testimony of near relatives when testifying for each other; that it was the province of the jury to consider and decide on the weight of testimony." *State v. Ellington*, 7 Iredell, 67.

In the case at bar, quite a number of the relatives of the defendant testified to a state of facts, which, if true, rendered it impossible for the defendant to have been at Clarksville at the time Ward was shot. The instruction does not in any manner direct the jury which of the witnesses it should give the greatest credence to, nor does it say the evidence is contradictory or irreconcilable, but leaves the jury to determine the question, and prescribes a rule to govern them in the event they should find it could not be reconciled, and there was no error in giving it.

The ninth instruction asked by the state reads as follows : " A confession voluntarily made is one of the strongest proofs of guilt; and more especially so when corroborated by other proofs, and if the jury believe that the defendant voluntarily admitted to Payne that he committed the deed, and they believe it to be true, and the other attending circumstances show

the killing to have been murder in the first degree, they will so find."

If there is objection to the above instruction it must be on the ground that it makes the admissibility of the defendant's admissions a matter for the jury to pass upon.    The admissibility of confessions or admissions in proof of guilt is a question wholly within the province of the judge to consider and decide.   1 Greenl., 219.

In this case, the admissions of Wallace to Payne went to the jury without exception or objection, and were as fully before the jury as though the question of the admission of the confession had been presented to the court and passed upon, and admitted by the judge.    When the court has once passed upon the admissibility of evidence relating to a confession, an admission of the defendant going to establish his guilt, if admitted, the jury must consider it as competent evidence, and cannot exclude it; an instruction, therefore, although erroneous, that could only inure to the benefit of the accused, is not a ground of reversal.

Counsel contend that the instruction assumes that the accused had confessed the crime by certain statements he made to one Payne.    Payne testified that after Judge Mears was shot, he was at the defendant's house, and that defendant asked him what the people said about the killing of Mears; that he answered, "they don't talk much about it;" that the defendant then said: "Tom, don't tell that I killed Doc. Ward (the deceased); if you do, they will go for me, and I will shoot you if you tell it."    After the defendant was arrested he had another conversation with him, in which defendant said: "Tom, if you should be brought before the grand jury, I don't want you to remember anything, for, if they find out that I killed Ward, it will take two or three hundred dollars to prove out of it."

Before testifying to these confessions or admissions, Payne testifies that on the Monday night previous to the Wednesday when Ward was shot, at eight or nine o'clock, he saw the accused crouched down behind the court house fence, nearly opposite Ward's (the deceased) office, with a double barrelled shot gun and pistols, and said, "Hello! who is this?" when defendant said, "Is that you, Tom?" and he answered "Yes." Defendant informed him he was watching for Ward, and said he intended to "burst his old hide," and asked witness if he knew where Ward was. Witness said he had gone to bed. Defendant then asked where Ward usually sat. Witness told him Ward usually sat in front of the drug store which adjoins his office. Defendant said he intended to "burst his (Ward's) old hide," and if he continued to sit there he would shoot him in two; that he was "on it," and intended to kill until he was killed, and if he (witness) ever told any one that he saw him (defendant) there, and what was said, he would shoot witness.

The instruction does not assume a confession — it merely undertakes to describe the effect of a confession, and the grade of such evidence. The confession — if confession at all — is extra judicial, and whether such confessions stand upon as high grounds as the judicial is not well settled. If the *corpus delicti* be proven, and there be corroborating facts, we are unable to see why an extra judicial confession is not as high a grade of evidence as the judicial, where the *corpus delicti* is proven but no corroboration; but, whether it is or not, there is no reason why an extra judicial confession voluntarily made should not go to the jury. Wharton says (vol. 1, p. 472): " A free and voluntary confession by a person accused of an offense — whether made before his apprehension or after, whether on a judicial examination or after commitment, whether reduced to writing or not, in short, any voluntary

confession made by a defendant to any person at any time or place—is strong evidence against him, and if satisfactorily proved when there is proof of the *corpus delicti*, sufficient to convict according to the common law, without any corroborating circumstances." 2 Leach C. C., 625; 2 Hawk. P. C., 46; 2 Russ. on Crimes, 824; and *State v. Lamb*, 28 Mo., 218.

In the last cited case, the supreme court of Missouri held that, "An extra judicial confession, with extrinsic circumstantial evidence satisfying the minds of a jury beyond a reasonable doubt that the crime charged had been committed, will warrant a conviction; although the dead body may not have been discovered and seen, so that its existence and identity can be testified to by an eye witness."

The tenth instruction asked by the state is as follows: "Of all kinds of exculpatory defense, that of an alibi, if clearly established by unsuspected testimony, is the most satisfactory and conclusive."

The defense set up was an alibi, and we cannot see wherein the defendant's rights were prejudiced by the instruction. It is general in its terms, and is the enunciation of a well established principle of law, and seems to have been given as a prelude to the eleventh instruction, which to some extent attempts to point out an artifice sometimes resorted to in proving an alibi.

The fourteenth instruction asked by the state is as follows: "The legal test of evidence for conviction is its sufficiency to satisfy the understanding and conscience of the jury, and their minds should be so convinced by the evidence that they would venture to act on that conviction in matters of the highest importance and concern to their own interests."

In argument, counsel have not attempted to point out any error in this instruction, and, seeing none at a casual glance, we will pass it without further comment.

The fifth instruction asked by the defendant reads as follows: "In cases of circumstantial evidence a complete chain of material facts must be credibly and satisfactorily proven, and conflicting proof as to any material fact in the chain of evidence may justly raise a reasonable doubt as to the guilt or innocence of the defendant." To this the court added the words, "when the weight and credibility of opposing evidence is equal."

The sixth instruction asked by the defendant reads as follows: "That in order to convict the defendant the state must prove all the material allegations in the indictment, and that the act charged was committed willfully, deliberately and with malice aforethought." To this instruction the court added the following words: "But proof of the killing may raise a presumption of malice."

The seventh instruction asked by the defendant reads as follows: "That although the jury believe from the evidence that the defendant did threaten to take the life of the deceased, it is proper to consider such threat as a circumstance in the evidence, yet in doing so they should also consider that the words in which such threats were supposed to be made may have been misunderstood or misremembered, and that the defendant may have made such threats without any intention of committing a crime." To this instruction, after the words "yet in doing so they should also consider," the court added the words, "if they believe the evidence warrants it."

We see no error in making the addition that was made, nor in refusing to give the fifth, sixth and seventh instructions as asked.

After the conclusion of the opening argument by the state, the defendant asked the court to instruct as follows: "That a difference or contradiction in the statements of witnesses who have testified in behalf of the defendant, as to any immaterial

fact or matter, is not sufficient to render them unworthy of belief, or even to affect their credibility, and that in the absence of proof to the contrary, the veracity of a witness is presumed."

The determination of the credibility of a witness is to be judged of and determined by the jury, and the jury, in our opinion, may base their estimate of the amount of credit which shall attach to the testimony of a witness, upon immaterial as well as material facts. There was no error in refusing to give this instruction.

The thirteenth instruction asked by the defendant, like the twelfth, was presented to the court after the close of the opening argument, and is as follows: "That in case of conflicting presumptions, that which assumes innocence of a criminal offense will be adopted."

We can see no reason why the conflicting presumptions, any more than conflicting evidence, should be resolved in favor of the innocence of the accused. The accused is always given the benefit of doubts, but beyond this the law does not go. There was no error in refusing to give this instruction. The court is under no obligation to give an instruction asked by either party. The duty of the court is to charge the jury as to the law of the case, and if this be done in the instructions given at its own instance or on its own motion, this is all the law requires. Either party has the right to ask the court to charge what he believes to be the law, and if this has not already been done in the charge given, a refusal to charge the law would be error. The code contemplates that counsel shall present their instructions to the court before the argument of the case. (Sec. 349, Crim. Code.) After the court has instructed the jury as to the law of the case, the cause is in effect submitted, and whether after the submission the court will instruct the jury is a matter within the discretion of the court.

35

Having disposed of the questions arising on the admission and rejection of important evidence, and those arising on in-structing or refusing to instruct the jury, but one other remains to be disposed of, and that is, Did the court err in overruling a motion for a new trial?

There are but seven grounds named in the code for which a new trial can be granted:

" *First.* Where the trial in a case of felony was commenced and completed in his absence." No claim of this sort is made in the case at bar, and for this reason we pass without further comment to the next ground.

"*Second.* Where the jury has received any evidence out of court other than that resulting from a view, as provided in this code." It is not claimed the jury received any evidence outside of the court; and for this reason we pass to the next ground.

" *Third.* Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors." It is not claimed the judgment in this case was de-cided by lot, or in any other manner than by a fair expression of opinion; and this ground of the motion, like the first and second, need not be further mentioned.

" *Fourth.* Where the court has misinstructed or refused properly to instruct the jury." The objections to the instruc-tions given and refused that were objected to have already been referred to, and it is unnecessary again to discuss them.

" *Fifth.* Where the verdict is against law or evidence." The jury, in our opinion, under the law given, might well have found the verdict it did, and the verdict is not without evi-dence to sustain it.

." *Sixth.* Where the defendant has obtained important evi-dence in his favor since the verdict." There is no claim that such evidence has been discovered.

" *Seventh.* Where, from the misconduct of the jury, or from any other cause, the court is of opinion that the defendant has not received a fair and impartial trial." Under this last clause five distinct causes are alleged for a new trial.

" 1. That the indictment against him upon which he has been tried herein was found at the present term of this court, before he had been arrested, held or committed to answer the plaintiff upon the charge made in said indictment, and the same was not, before the trial herein had, docketed in this court for any day.

" 2. That said indictment was found against him at the present term of this court, and yet no order of this court was made fixing a day of trial thereof.

" 3. That in selecting the jury who rendered the verdict herein, the clerk of this court did not draw from the jury box the names of jurors as provided by law until the regular panel was exhausted, nor was such drawing waived by the defendant.

" 4. That the court erred in ordering the sheriff to summon an additional panel of twenty-four jurors before the regular and duly elected panel had been drawn from or exhausted.

" 5. That the court erred in refusing to sustain the defendant's challenge to such additional panel of jurors, and in overruling the defendant's motion for an order of the court directing a new panel to be summoned by some person to be by the court designated."

Section 277 of the criminal code declares that: " Decisions of the court, upon challenges, to the panel, and for cause, and upon motion to set aside an indictment, shall not be subject to exception." This section disposes of the fifth ground or reason assigned for a new trial, for it must be clear to all that this court ought not to reverse a judgment for a cause, the ruling of the judge on which the law says " shall not be subject to exception."

There is nothing in the bill of exceptions in this case in support of the third and fourth grounds for a new trial. The things complained of therein do not appear of record, and where this is the case, the only manner in which or by which they can be brought before this court for review is by a bill of exceptions.

Section 186 declares: "If the defendant is in custody, or on bail, when the indictment is found, the trial may take place at the same term of the court, on a day to be fixed by the court."

The defendant in moving for a new trial says he was not in custody, or on bail, at the time of the finding of the indictment, and insists it was the duty of the court to have fixed a day for the trial. It appears from the record that the defendant was arraigned on the twenty-fifth day of October, 1873, and that he pleaded not guilty, and that he was not again brought into court until the eleventh of November following, at which time, the record shows the selection of the jury commenced. If the defendant was not ready for trial, or desired the court to fix a day for trial, he ought to have so moved the court, and if it refused to do so, to have excepted to its rulings in that respect and saved the point by a bill of exceptions. Neither the record, nor the bill of exceptions, discloses an exception to the action of the court in proceeding to trial. The 189th section of the code declares that, "When an indictment is called for trial, or at any time previous thereto, the court upon sufficient cause shown by either party may direct the trial to be postponed to another day of the same term, or to another term. The record shows the indictment was "called for trial," and when it was called, if the defendant was not ready to proceed, it was his duty to have the court fix another day, if a proper showing was made. The defendant is entitled to a fair and impartial trial, and if in

anything he has been deprived of this, we should not hesitate to reverse the judgment of the court below; but while this is true the law also enjoins a duty on him, and that is that the acts and proceedings which tended to deprive him of a fair and impartial trial shall be excepted to, and the evidence thereof preserved by a bill of exceptions as to all matters that do not otherwise appear of record. Where a trial has been properly conducted in other respects, this court will not reverse a judgment of conviction simply because the record fails to show that the court set a day for trial. In our opinion neither the first nor second grounds named in the motion for a new trial come within the spirit or meaning of section 268 of the criminal code.

We have at great length taken up and in regular order discussed all the questions raised by counsel, without regard to any defect in the bill of exceptions and as though none existed. The bill of exceptions clearly and distinctly shows that it contains all the evidence, but it nowhere negatives the idea that no other instructions were given; this it should show. The object of a bill of exceptions is to present to the appellate court a point of law decided in the court below prejudicial to the substantial rights of the party appealing. The code (367 civil) says: "The objection must be stated" in the bill of exceptions. Justice DANIEL, in the case of *Camden v. Doremus*, 3 How., 530, in speaking of a bill of exceptions, says: "Upon the offer of testimony, extended and complicated as it may often prove, it could not be expected upon the mere suggestion of an exception which did not obviously cover the competency of evidence, nor point to some defect in its character, that the court should explore the entire mass for the ascertainment of defects, which the objector himself either would not or could not point to. It would be more extraordinary still if, under the mask of such an objection, or mere hint at an

objection, a party should be permitted, in an appellate court, to spring upon his adversary defects which it did not appear he ever relied on, and which, if they had been openly and specifically alleged, might have been easily cured." *Crisman v. McDonald, ante,* p. 8.

No ground of objection is stated to advise this court of the question presented in the court below, to show whether the court was passing upon the relevancy, competency or admissibility of testimony. This practice cannot be tolerated, for were we to indulge it we might strike out evidence admissible for one purpose when it had been excluded upon other grounds.

The condition of the record and bill of exceptions is such that, although more egregious blunders had been committed than were at the trial, we would not be authorized to reverse the judgment in this case.

Judgment affirmed.