AMERICAN CAR & FOUNDRY CO. v. BRINKMAN.

(Circuit Court of Appeals, Seventh Circuit. May 18, 1906.)

No. 1,195.

1. MASTER AND SERVANT—INJURY TO SERVANT—FELLOW SERVANTS.

Plaintiff was employed by defendant as a stationary engineer in its car shops, where he was under the orders of a chief engineer, who called him from his regular duties to another part of the works to assist in testing a new electric motor. Plaintiff had no knowledge of such machines, but the chief engineer had and directed the work. The motor became heated, as the evidence tended to show, from the presence of water therein, which was a recognized source of danger; but the chief engineer, although having knowledge of such fact, again turned on the current, when an explosion took place, by which plaintiff was injured. Held, that the rule of fellow servants did not apply, nor did plaintiff assume the risk from such danger, which was unknown to him and not in his regular line of employment, but that the duty of seeing that the motor was free from any dangerous defect which was discoverable by reasonable inspection was a positive one of the master, which plaintiff had the right to assume would be performed, that in such respect the chief engineer was defendant's representative, for whose negligence, if proved, it was responsible to plaintiff.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 422, 616.]

2. APPEAL—RESERVATION OF OBJECTION—OBJECTION EVIDENCE—SUFFICIENCY.

A general objection to a question asked a witness as "improper and immaterial" is insufficient as a basis for an assignment of error, where

the evidence called for is not so clearly incompetent from its essential nature upon any issue in the case that further specification of objection is unnecessary.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1141; vol. 46, Cent. Dig. Trial. §§ 194–196, 199.]

In Error to the Circuit Court of the United States for the Southern District of Illinois.

Geo. F. McNulty, for plaintiff in error.

David E. Keefe, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The American Car & Foundry Company, plaintiff in error, was the defendant below in an action of trespass on the case for injuries suffered by the defendant in error while in its service through alleged negligence on the part of the plaintiff in error. The trial resulted in a verdict and judgment against the American Car & Foundry Company, and various errors are assigned for reversal.

The undisputed facts, in substance, are these: The corporation plaintiff in error is engaged in a large manufacturing industry at Madison, Ill., with a plant of several buildings, one portion or department for car shops and another for foundry. Brinkman, the defendant in error, was employed in the car department, as night engineer, had long general experience as a steam stationary engineer, and had charge of three engines and the engine room during his night shift. He was employed by and directly under the orders of Hiscox, the chief engineer. The general foreman of the car shops was one Shipley, while there was a general superintendent of the works and a general manager for the district. Brinkman was injured by the explosion of an electric motor, in a place distant and apart from his engine room, while performing unusual duties, upon call by and under the direction of the chief engineer, as a helper in testing the motor. This motor was obtained for pumping purposes several months prior to the accident, but had not been used. Awaiting its placing and use, it was left in the engine room, and so remained when the works were flooded by an overflow of the Mississippi river, so that the water was in the engine room for about nine days, in depth stated variously at three, four, and six feet: and the motor was lifted from the floor, by means of chain and tackle, but the testimony is inconclusive whether it was free from water. When the water subsided the motor was lowered to the floor, and thus remained for about three months prior to its removal to the pump house; and the testimony indicates that the engine room was warm and dry after the flood. Hiscox had experience in electricity and electric apparatus, including motors; but the testimony at least tends to show that Brinkman had no such experience, beyond the operation of his engine as the generating power for such appliances as were used. Hiscox proceeded to test the motor before putting it into service, called Brinkman from his usual place and duties to assist him, and Brinkman placed himself under the direction of his chief, as his servcie required. The operation included two tests at intervals, and, while the testimony

is conflicting in some details, it is undisputed, that Hiscox found trouble from heating, when the electricity was applied, but persisted in the application of the current and thus produced the explosion; that Brinkman was then engaged in watching the volt meter, as directed, and at no time took part in the motor operation; and that the latter was unacquainted either with the cause or the danger of the heating of the motor thus operated. The testimony at the least tends to establish that the heating was due to dampness in the motor, a well-recognized source of danger; that it was observed repeatedly by Hiscox during the operation, and that he was careless in thus persisting with the current, in the face of these well-known indications of defect and ensuing danger; that the only course for any operator of reasonable prudence was to cease the use until the defect was ascertained and corrected; and that the presence of water in the motor was the probable cause of the disaster.

With the rulings of the trial court, verdict, and judgment thus supported by testimony, the main assignments of error, relating to instructions given or refused, require no discussion in detail, for the reason that all rest upon these contentions on the part of the plaintiff in error: (1) That Brinkman and the chief engineer, Hiscox, were fellow servants; (2) that in the performance of the service in question the former assumed all risks arising from the negligence of his chief in such performance; or (3) that contributory negligence on the part of Brinkman, defendant in error, conclusively appears. Unless the defendant in error is chargeable with assumption of the risk involved in the service in question, neither of the assignments referred to is tenable.

The doctrine is elementary, at common law, that the servant assumes ordinary risks incurred in the line of his service from negligence of co-employés, when the master is without fault in their employment or retention in service. It is further established by the Supreme Court, in a line of decisions reviewed in New England Railroad Co. v. Conway, 175 U. S. 323, 328, 20 Sup. Ct. 85, 44 L. Ed. 181, that such rule includes employés in the "same general undertaking" of the master, irrespective of their grade in the service. So the chief engineer (Hiscox) and his subordinate (Brinkman) were unquestionably fellow servants, within such rule, in the general service of the plaintiff in error. Another rule, however, is equally well settled and applicable to the testimony under review, which is thus stated by Judge Jenkins, speaking for this court, in Lafayette Bridge Co. v. Olsen, 47 C. C. A. 367, 369, 108 Fed. 335, 45 L. R. A. 33:

"It is the duty of the master to use ordinary care to furnish appliances reasonably safe for the use of servants, such as with reasonable care on his part can be used without danger save such as is incident to the business in which such instrumentalities are employed. * * * These duties may not be foregone, and, when delegated to be performed by another, that other is a vice principal and quoad hoc represents the principal, so that his act is the act of the principal. That other may have a dual character—vice principal with respect to the duty due from the master to the servant, and coservant with respect to his acts as a workman."

The injury in that case arose from the weakness of a plank, which was taken by the foreman of the gang from a pile of lumber, assisted by the fellow servant, and used for a support, in the course of bridge construction. The plank broke and the load fell, throwing the helper into the river and causing his death, for which recovery against the master was affirmed. As further remarked in that opinion, the helper was not chargeable with notice of the insufficiency of the plank, as "that was matter of technical knowledge and experience, which would not be left to the judgment of a common laborer," but the inspection was a "positive duty" which "the master owed to the servant," and the acts of the foreman therein were the acts of a vice principal and not of a fellow servant.

The distinction thus pointed out and upheld—in reference to the positive duty owing by the employer, and the right of the employés to assume its performance by the representative of the master, and that he will not be called upon to use defective appliances, when the defects are discoverable upon reasonable inspection—is supported by well-considered authorities, too numerous to require citation, beyond reference to the opinion in Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188. Its applicability to the testimony in the present record is unquestionable. As it was the duty of the plaintiff in error to inspect and test the motor, if needful under the known conditions to ascertain its sufficiency for the required use, Hiscox was in the performance of that duty as vice principal. The defendant in error, called from his work as a helper unskilled in that line, was not in the relation of fellow servant within the first-mentioned rule, and was entitled to assume that the vice principal was qualified for the duty and would warn and protect the helper from danger which was discoverable by the electrician. Exercise of reasonable care in keeping on the electric current, under the circumstances disclosed, was the duty of the principal, and the helper cannot be presumed, without proof, to apprehend danger which may have been apparent to the skilled operator, and is not presumptively chargeable with an assumed risk or contributory negligence in remaining at his station as directed.

The issue of breach of duty on the part of the plaintiff in error was rightly submitted to the jury for determination under all the evidence, although the instructions did not observe the above-mentioned distinction between the relation of vice principal and fellow servant in the transaction, upon that issue, nor upon the question of contributory negligence. In all other respects the instructions were fair and without fault, and, if faulty in reference to risk assumed by the servant, they were in no sense prejudicial to the plaintiff in error and furnish no ground for reversal.

The question remains whether error is well assigned for overruling objections to testimony. Three instances are assigned, but the only objection which is pressed in the argument or is entitled to consideration appears in the course of the testimony of Brinkman, the plaintiff below. The record reads:

"Q. Are you a married man? A. Yes, sir. (Objected to by counsel for the defendant, as improper and immaterial.) Court: It may not be material, but anything pertinent to personal history of a witness is competent within the reasonable discretion of the court. (Objection overruled, to which ruling of the court the defendant then and there excepted.)"

Assuming that the fact of marriage had "no legitimate bearing upon any issue in the case" and that the inquiry was objectionable within the rule of Pennsylvania Co. v. Roy, 102 U. S. 451, 460, 26 L. Ed. 141, nevertheless the objection was neither timely nor specific; nor does it appear to have been called to the attention of the court subsequently, by motion, request for instruction, or otherwise. If deemed prejudicial, for any inferences which might arise in the minds of jurors, as now urged, such ground should have been brought to the attention of the trial court, without resting on the general objection, affording no light in that view. Sigafus v. Porter, 84 Fed. 430, 435, 28 C. C. A. 443, 449. The salutary rule that such general objections are not available on writ of error is stated and upheld by this court in North Chicago St. R. Co. v. St. John, 85 Fed. 806, 807, 29 C. C. A. 634, citing many authorities, and again in Columbus Safe Deposit Co. v. Burke, 88 Fed. 630, 634, 32 C. C. A. 67. In Camden v. Doremus, 3 How. 515, 530, 11 L. Ed. 705, like objections are well characterized as "vague and nugatory" and "without weight before the appellate court"; and it is unnecessary to multiply citations upon this rule beyond the reference to Burlington Ins. Co. v. Miller, 60 Fed. 254, 256, 8 C. C. A. 612; Ogden City v. Weaver, 108 Fed. 564, 569, 47 C. C. A. 485; Baltimore & Ohio R. Co. v. Hellenthal, 88 Fed. 116, 119, 31 C. C. A. 414; Ohio & Mississippi R. Co. v. Walker, 113 Ind. 196, 200, 15 N. E. 234, 3 Am. St. Rep. 638—all pertinent exemplifications. As remarked in the last-mentioned case:

"The particular objection must be fairly stated. It is not enough to state that the evidence is incompetent, or that it is immaterial and irrelevant. This much is implied in the bare fact of objecting. If it be unnecessary to state the particular objection, quite as well say 'We object,' and done with it, since a mere general objection amounts to nothing more, for it is simply tantamount to an expression of the fact that counsel do object. It is no answer to the proposition asserted by the authorities to say that the evidence itself may reveal the objection, for this may be said of all incompetent and irrelevant evidence, when carefully scrutinized, and, if this be true, then there would be no reason for requiring a specific objection in any case. But there is reason for requiring the particular objections to be stated with reasonable certainty; for, in the hurry of a trial, it cannot be expected that particular objections will occur to the judge, although, if stated, he would readily perceive their force. Counsel, who are presumed to have studied the case, ought to be able to state the particular objections, and, if none are stated, it is fair to assume that none exist, since an objection that cannot be particularly stated is not worth the making."

Doubtless the general objection may be treated as sufficient when a question calls for evidence which must "in its essential nature, be incompetent" (Turner v. City of Newburgh, 109 N. Y. 301, 308, 16 N. E. 344, 4 Am. St. Rep. 453), or which "could under no circumstances have been competent" (Pittsburgh & W. Ry. Co. v. Thompson, 82 Fed. 720, 728, 27 C. C. A. 333), as the departure from elementary rules of evidence may then be obvious without specification or reference

to particular issues. The question and answer under consideration are not within any such exception, and both their connection in the examination and the remarks of the court in overruling the objection indicate that neither the ground nor the tendency to prejudice now urged was in the mind of the court, if contemplated by either party. The objection is insufficient, therefore, and the assignments for error in the admission of testimony are overruled.

No reversible error appearing in the record, the judgment is affirmed.