PRETTYMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1910.)

No. 2,004.

1. BANKS AND BANKING (§ 256*)—MISMANAGEMENT—OFFICERS—PUNISHMENT.
    Gross maladministration and inexcusable breach of duty on the part of the officers of a national bank in its management, however disastrous to its stockholders, are not punishable unless in violation of Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497).
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–964, 967; Dec. Dig. § 256.*]

2. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY—NATIONAL BANKS—OFFICERS—JOINING PRINCIPAL AND ACCESSORY—MISAPPLICATION OF FUNDS.
    Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), provides that every president, director, cashier, teller, clerk, or agent of any national banking association who willfully misapplies any of its funds with intent to injure or defraud the association, and every person who with like intent aids or abets any officer, clerk, or agent in any violation of the section shall be deemed guilty of a misdemeanor. Held, that under such section it is proper to join in a single count of the indictment a charge of willful misapplication of the bank's funds by its officers and a charge that the other defendants aided and abetted them therein, and that such joinder did not render the indictment demurrable for duplicity.
    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

3. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES.
    The rule that acts not charged in an indictment cannot be proved is subject to the exception that, where the intent with which an act charged to be criminal has been done is important, proof of similar acts of accused is admissible to show intent.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—INTENT.**

Similar acts to that charged in the indictment can be proved to show intent only when they are acts of accused sufficiently near, in point of time, to the act charged as to fairly throw some light on the question of intent, and when such similar acts are so related in kind to the one charged as to illustrate the question of intent, and are of the same general nature or closely related to the transactions out of which the alleged criminal act arose.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

**5. CONSPIRACY (§ 45*)—EVIDENCE.**

Where an indictment against officers of a national bank and certain others, alleged to have aided and abetted them in the misapplication of the bank's funds, charged conspiracy and intent to willfully misapply the bank's funds in several ways, and, among them, of procuring and causing it to make large loans to a hosiery company by paper indorsed by a woolen company, which, it was claimed, was then largely indebted to the bank, proof that funds of the bank were loaned on paper of the hosiery company which was indorsed by the woolen company was admissible, but it was not proper to admit evidence of a mortgage given by the woolen company to the bank, nor as to notes which the woolen company made to the bank to secure its individual obligations, and not as indorser of the hosiery company.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 45.*]

**6. CRIMINAL LAW (§ 695*)—TRIAL—RECEPTION OF EVIDENCE—OBJECTIONS.**

Objections to evidence failing to state the precise grounds on which they are made are unavailable for any purpose.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1633–1638; Dec. Dig. § 695.*]

**7. CONSPIRACY (§ 45*)—NATIONAL BANKS—OFFENSES—MISAPPROPRIATION OF FUNDS.**

In a prosecution against officers of a national bank and certain alleged aiders and abetters for the willful misappropriation of the bank's funds, a question to one of the officers, if he had any arrangement with the vice president of the bank or any agreement with him by which the bank was to be defrauded by willfully abstracting its funds and appropriating them to illegitimate purposes, should have been allowed.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 45.*]

**8. CONSPIRACY (§ 45*)—NATIONAL BANKS—OFFICERS—MISAPPROPRIATION OF FUNDS.**

Where, in a prosecution against officers of a national bank and alleged aiders and abetters for misapplying the bank's funds, it was claimed that such application was made partly through overdrafts by defendant K. for the benefit of a hosiery company, and that defendant K. had conspired with certain of the officers of the bank to defraud it of its funds, evidence that many other customers of the bank had made overdrafts on it, the details of which were exhibited on certain pages of the bank's individual ledger offered in evidence, was admissible as bearing on defendants' criminal intent.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 45.*]

**9. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—MISAPPROPRIATION OF FUNDS.**

Where, in a prosecution of the vice president of a bank for alleged misappropriation of the bank's funds in the payment of overdrafts by the bank's cashier, there was no evidence that the checks representing the overdrafts were paid with the knowledge or under the directions of the vice president, the offense as to him was not proved, under the rule that to constitute a willful misappropriation of a national bank's funds

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

there must in fact be an unlawful application by the person charged, with intent to injure and defraud the bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

10. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—MISAPPROPRIATION OF FUNDS—CONVEYANCE—QUESTION FOR JURY.

In a prosecution of defendant K. for aiding and abetting the officers of a national bank in the misappropriation of the bank's funds by means of checks and drafts of a hosiery company, in which such defendants were interested, whether such appropriation was intended to injure and defraud the bank *held* for the jury.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

11. BANKS AND BANKING (§ 257*)—MISAPPLICATION OF FUNDS—MORTGAGES.

In a prosecution of national bank officers and alleged aiders and abetters for misapplying the bank's funds, evidence of the taking of a mortgage to secure an indebtedness represented by overdrafts and the making of an additional loan secured by deposit of other collateral, the effect of which was to give the bank better security than before, was insufficient to sustain a conviction.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

12. CONSPIRACY (§ 43*)—NATIONAL BANKS—MISAPPROPRIATION OF FUNDS—CONSPIRACY—INDICTMENT.

Where a count in an indictment against a bank's officers and alleged aiders and abetters charged conspiracy to violate Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), prohibiting the willful misapplication of the funds of a national bank, and that in order to effect the object of the conspiracy defendant K., one of the parties thereto, drew and accepted a draft, set out, presented it to the bank, and obtained credit for the amount thereof for a hosiery company in which K. was interested, and which was the drawer of the draft, the indictment sufficiently charged that an act was done by one of the parties of the alleged conspiracy to effect the object thereof and sufficiently identified and specified such act to withstand a demurrer.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

13. CRIMINAL LAW (§§ 300, 328*)—PLEA OF NOT GUILTY—BURDEN OF PROOF.

In a criminal prosecution, pleas of not guilty put in issue every allegation in the counts of an indictment to which they are addressed and place on the government the burden of proving every essential element of the offenses charged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 684–686, 730; Dec. Dig. §§ 300, 328.*]

14. CONSPIRACY (§ 44½)—NATIONAL BANKS—OFFENSES—MISAPPLICATION OF FUNDS.

Where an indictment for conspiracy to willfully misapply the funds of a national bank charged that the conspiracy had been formed between certain officers of the bank and defendant K. to willfully misapply the funds of the bank to the use of a hosiery company, and that such conspiracy was accomplished by an act of defendant K. in drawing and accepting a draft in behalf of the hosiery company, and in depositing the draft in the bank, and obtaining credit therefor in the hosiery company's account, to effect the object of the conspiracy, the burden was on the government to prove that the conspiracy as alleged was entered into, that defendant K. was a party to it, and that the acts referred to were done by him to effect the object of the conspiracy in order to sustain a conviction.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 44½.*]

15. CONSPIRACY (§ 47*)—MISAPPLICATION OF FUNDS.

Since, under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), making it an offense to misapply the funds of a national bank, that offense can only be

committed by an officer or agent of the bank, under a count of an indictment for conspiracy to misapply funds of the national bank, it is sufficient to show an agreement to commit that offense made between either the cashier or the vice president of the bank and the defendants for whose benefit the money is alleged to have been withdrawn.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

16. BANKS AND BANKING (§ 257*)—NATIONAL BANK—OFFENSES—MISAPPLICATION OF FUNDS—CONSPIRACY.

In a prosecution of certain officers of a national bank and defendant K. for conspiracy to misapply the bank's funds, evidence *held* to sustain conviction.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.*]

Evans, District Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of Ohio.

James S. Prettyman and others were convicted of violating an action of banking act, and they bring error. Reversed, with directions.

T. E. Powell, for plaintiff in error Prettyman.
A. T. Seymour, for plaintiffs in error Kapners.
T. H. Darby, for the United States.

Before WARRINGTON and KNAPPEN, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. In October, 1898, the First National Bank of Dresden, Ohio, commenced business as a national bank with a capital of $50,000. James S. Prettyman, one of its directors, became its vice president, and Cephas S. Littich was appointed its cashier. They were continued in office until the latter part of 1907. The president of the bank, Prettyman, its vice president, and Littich, its cashier, were appointed an exchange or discount committee; but the committee appears never to have held a meeting after its organization. The Muskingum Valley Woolen Manufacturing Company, which will hereafter be called the "woolen company," was a manufacturing corporation in the vicinity of Dresden, of which Prettyman was president, and in which Jacob Kapner was a stockholder. Another manufacturing company in the same locality was the Kapner Bros. & Duga Hosiery Company, which hereinafter will be called the "hosiery company." In this concern Prettyman had no interest. Its affairs were managed by Jacob Kapner and Abe Kapner. Both of these corporations continued business as going concerns until after August, 1907. In the course of a few years prior to August, 1907, the woolen company became indebted to the bank to the extent, approximately, of $60,000, which it was unable to pay, and during about the same period the hosiery company became indebted to the bank in the sum of $77,566, which it could not pay, and the result was the collapse of the bank, for which a receiver was appointed by the Comptroller of the Currency in the latter part of 1907. Much of the indebtedness of each of the corporations to the bank was the result of payments by Littich, the cashier, of numerous checks and drafts drawn

by the respective companies when there were no funds to meet them. Indeed, the readiness of Littich, the cashier, to pay out of the bank's funds the drafts and checks drawn respectively by these companies was hardly less than that of the companies to draw upon those funds. The liberality of the cashier in the use of the funds intrusted to his care was doubtless an encouragement to the two companies to draw ad libitum, and they seem not to have been at all backward about doing so. The conduct of Littich, the cashier, in recklessly paying overdrafts, and that of Prettyman, the vice president, in insisting upon and accepting excessive accommodations for the woolen company, of which he was then the chief executive officer, were most reprehensible and altogether lacking in faithfulness to the trust reposed in them by the stockholders of the bank and merits the severest condemnation. And this is so whether or not all of that conduct shall turn out to include all of the elements of criminality prescribed by the statute under which they were indicted. But gross maladministration and inexcusable breach of duty on the part of its officers in the management of a national bank, however disastrous such conduct may be to its stockholders, are not punishable unless they come within the provisions of section 5209 of the Revised Statutes (U. S. Comp. St. 1901, p. 3497). The Supreme Court, in United States v. Brewer, 139 U. S., at page 288, 11 Sup. Ct. 541 (35 L. Ed. 190), though alluding to another enactment, announced the applicable principle when it said that:

"Before a man can be punished his case must be plainly and unmistakably within the statute."

The result of the transactions which have been outlined was the indictment, in 1908, of Prettyman, the vice president, Littich, the cashier, Jacob Kapner, and Abe Kapner. The indictment contains 14 counts. The first charges Cephas S. Littich, the cashier, and James S. Prettyman, the vice president and a director of the bank, with having willfully misapplied $2,137.85 of the funds of the bank for the benefit of a corporation known as the Kapner Bros. & Duga Hosiery Company with intent to injure and defraud the bank by paying certain checks drawn by the hosiery company, to wit, one of $2,000, payable to the drawer, and one for $127.85, payable to the Dresden Machinery Company, and which checks were drawn when the hosiery company was insolvent, when it had overdrawn its account with the bank, and when it had not sufficient money to its credit to meet the drafts, but which drafts the cashier nevertheless paid. In the same count the two Kapners are charged with having, with intent to injure and defraud the bank, aided and abetted Littich and Prettyman in the alleged willful misapplication of the money of the bank.

Each count in the indictment, from the second to the eleventh, inclusive, also charges the same things with respect to other described checks and drafts, each of which was drawn by the hosiery company on the bank for various sums and in favor of various persons.

These 11 counts will be referred to as the "willful misapplication counts."

The twelfth count is not now in question, as it was withdrawn from the consideration of the jury.

The thirteenth count, in effect, charges that Littich and Prettyman, with intent to injure and defraud the bank, willfully misapplied certain funds and credits of the bank for the benefit of the hosiery company by taking up and surrendering various checks, drafts, and notes due from the latter, upon some of which others were bound as sureties, and in lieu thereof taking the notes of the hosiery company alone for the amount due, and, in connection with other creditors of the hosiery company, taking a mortgage upon the entire property of that concern, which property was wholly insufficient to pay the mortgage debts. The count further charges the Kapners with aiding and abetting Littich and Prettyman in this alleged misapplication of the bank's funds and credits. This count will be referred to as the mortgage count.

The fourteenth count will be fully explained further along. For the present we need only remark that it charges that the defendants entered into a conspiracy to violate section 5209 of the Revised Statutes of the United States by willfully misapplying the money, funds, and credits of the First National Bank of Dresden with intent to injure and defraud the same. This count will be referred to as the conspiracy count.

The government chose to make a witness of Littich, and he was not tried. Prettyman, Jacob Kapner, and Abe Kapner having made various motions, which were overruled, entered pleas of not guilty, but were convicted and sentenced to terms in the penitentiary. They have brought the case here, and have assigned error upon many rulings of the court below, only some of which need be noticed.

1. The defendants demurred to the willful misapplication counts and to the mortgage count, and also moved the court to quash them upon the ground that there were joined in each of those counts charges of the commission of two separate and distinct offenses; that is to say, that one offense is charged to have been committed by Littich and Prettyman alone, namely, that of willfully misapplying the bank's funds with intent to injure and defraud it, and that another offense is also therein charged to have been committed by Jacob Kapner and Abe Kapner alone, namely, that of aiding and abetting Littich and Prettyman in their commission of the offense charged against them. The court overruled both the demurrer and the motion to quash, and it is claimed that these rulings were erroneous.

Section 5209 of the Revised Statutes, so far as applicable to this case, is as follows:

"Every president, director, cashier, teller, clerk or agent of any (national banking) association who willfully misapplies any of the moneys, funds or credits of the association * * * with intent * * * to injure or defraud the association, * * * and every person who with like intent aids or abets any officer, clerk or agent in any violation of this section shall be deemed guilty of a misdemeanor and shall be imprisoned not less than five years nor more than ten."

Under these provisions, in the opinion of a majority of the court, it was admissible and proper to join in a single count of the indictment a charge of willful misapplication of the bank's money or funds by its officers and a charge that the other defendants aided and abet-

ted them therein, and therefore that it was not erroneous to overrule either the motion to quash or the demurrer. The writer takes the opposite view and thinks that the section quoted created among others those two separate and distinct offenses, the first having relation alone to officers or agents of the bank and the other to persons not such officers or agents, that each separate offense should be charged in a separate count, and that each of the counts referred to was open to the objection of duplicity. Consequently he is of opinion that it was alike error to overrule the motion to quash and the demurrer.

2. The court below, over the objections of the defendants, permitted the introduction of testimony as to many acts other than those alleged in the indictment in order to prove the intent of the accused in doing the things which are charged to be criminal. The thoroughly established general rule is that acts not charged in an indictment cannot be proved, among other reasons, because no testimony is pertinent unless it relate to the matters charged in the indictment and as to which an issue is formed by the plea of not guilty, and because the accused, having no notice that testimony as to any other act would be offered, could not be prepared to meet it. But to this general rule there is at least one important exception, and where the intent with which an act charged to be criminal has been done becomes important, as it necessarily is in this case, then, within certain limits, proof of similar acts of the accused is admissible in order to show the intent with which the act charged in the indictment was done. We think, however, that such similar acts can be proved only when they were done sufficiently near, in point of time, to the act charged as fairly to throw some light upon the question of intent; when the similar act is so related in kind to the one charged as to illustrate the question of intent; when the similar acts are in fact acts of the same general nature or closely related to the transactions out of which the alleged criminal acts arose; and when, in fact, the similar acts are acts of the person accused against whom that particular proof is directed. People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; Penn. Mut. Life Ins. Co. v. Mechanics', etc., Bank, 72 Fed. 422, 19 C. C. A. 286, 38 L. R. A. 33, 70; 3 Greenleaf on Evidence, §§ 15, 16; 1 Jones on Evidence, § 142; 1 Wigmore on Evidence, § 302; Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; Wood v. United States, 16 Pet. 360, 10 L. Ed. 987.

We shall not undertake to decide, especially as such questions are somewhat within the discretion of the trial court, which of the many supposed similar acts proved at the trial come within the general propositions just stated, but shall confine what we shall say in this connection to those parts of the testimony which relate to what was done by the woolen company, such as the making by it of certain notes of its own and a mortgage to the bank and to the drawing by it of certain drafts upon the bank in favor of the hosiery company or other persons. Nothing is charged in the willful misapplication counts nor in the mortgage count as to any of those matters; but testimony in respect to them was admitted upon each of those counts, though vaguely objected to by one of the defendants. In view of future action in

the case it will not be improper to say that it appears to us that no one of those acts of the woolen company was, in any proper sense, an act of either of the defendants, nor such as were similar to those acts of the defendants alleged in the counts just mentioned, nor was the mortgage or the notes or drafts by the woolen company in any sense the act either of Jacob Kapner or Abe Kapner.

The conspiracy count charges that it was intended by the defendants to willfully misapply the moneys, funds, and credits of the bank in several ways, and among them by procuring and causing the bank to make large loans to the hosiery company upon paper indorsed by the woolen company which, it is alleged, was then otherwise largely indebted to the bank. We think the paper of the hosiery company, if any, which was indorsed by the woolen company, might properly be admissible as evidence in support of the conspiracy count, but that it was not proper under this count to admit as testimony the mortgage which the woolen company made to the bank nor the notes which that company made to the bank for its own individual obligations and not as indorser for the hosiery company.

Except to the extent indicated this testimony was not competent upon any of the counts. But it does not follow from this that we should reverse the judgment for this error. In Noonan v. Caledonia Mining Co., 121 U. S. 400, 7 Sup. Ct. 915 (30 L. Ed. 1061), it was said:

"The rule is universal that, where an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such a character that it could not have been obviated at the trial. The authorities on this point are all one way. Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances that can be done. United States v. McMasters, 4 Wall. 680 [18 L. Ed. 311]; Burton v. Driggs, 20 Wall. 125 [22 L. Ed. 299]; Wood v. Weimar, 104 U. S. 786, 795 [26 L. Ed. 779]."

In District of Columbia v. Woodbury, 136 U. S. 462, 10 Sup. Ct. 994 (34 L. Ed. 472), the court expressed itself as follows:

"We will add that the objections made by the district to the evidence in relation to the plaintiff's contributions to medical journals, as well as to the entry upon the books of the express company, lose much of their force because they did not indicate with distinctness the precise grounds upon which they were intended to rest. Such general objections were well calculated to embarrass the court, and put it at disadvantage in its conduct of the trial. It was entitled to know the grounds of the objection, so that the jury could be put in possession of the real case to be tried. In Camden v. Doremus, 3 How. 515, 530 [11 L. Ed. 705], this court declined to consider objections made to the admission of evidence which did not state the grounds upon which they were made, and did not obviously cover the competency of such evidence nor point to some definite and specific defect in its character. 'We must,' the court said, 'consider objections of this character as vague and nugatory, and, if entitled to weight anywhere, certainly as without weight before an appellate court.' To the same effect are Burton v. Driggs, 20 Wall. 125, 133 [22 L. Ed. 299]; Patrick v. Graham, 132 U. S. 627, 629 [10 Sup. Ct. 194, 33 L. Ed. 460]."

The rule thus stated has been enforced in many other cases by the Supreme Court and by the various Circuit Courts of Appeal. It was enforced by this court in Merchants' Ins. Co. v. Buckner, 110 Fed.

346, 49 C. C. A. 80, and in other cases. And so it was by the Circuit Court of Appeals of the Seventh Circuit in Shandrew v. Chicago, etc., Ry. Co., 142 Fed. 322, 73 C. C. A. 430, and in American Car Co. v. Brinkman, 146 Fed. 712, 77 C. C. A. 138.

Tested by these rules, the objections to the testimony to which we have alluded were too vague to enable us to act upon them.

3. In the course of the cross-examination of Littich, the counsel of Prettyman asked him if he claimed that he had any arrangement with Prettyman or any agreement with him by which the bank was to be defrauded by willfully abstracting its funds and diverting them to illegitimate purposes. The court sustained an objection to the question, and Prettyman excepted. The word "abstracting," though not representing any charge actually made in the indictment, is so used in connection with other language in the question as to make very important the proposition whether any agreement existed for diverting the funds of the bank to illegitimate purposes, and this is especially so in view of the prominence of Littich in all the transactions and of the fact that there could be no conviction without showing that he was a guilty participant therein. If the word "misapplying" had been used, it would, of course, have been more accurate. Nevertheless, we think the question was a proper one. It clearly admits of an answer relevant to the issues raised by the plea of not guilty and favorable to the party asking it, and we think it was error to exclude it. Buckstaff v. Russell, 151 U. S. 637, 14 Sup. Ct. 448, 38 L. Ed. 292.

4. The defendants Jacob and Abe Kapner offered to prove that many other customers of the bank had made overdrafts upon it, the details of which were exhibited on certain pages of the individual ledger of the bank which were offered in evidence. The court sustained the objections of the government to the introduction of this testimony, and the two defendants excepted to the ruling. We think it was error to exclude this testimony, as it had a manifest tendency to show the custom of the bank at the time the hosiery company was making overdrafts upon it. The testimony would throw some light upon the motive of the Kapners, and was for that reason competent not only upon the willful misapplication counts, but also upon the conspiracy count. If it were the habit of the bank to permit overdrafts by its customers, it may be less probable that the overdrafts of the hosiery company were made with criminal intent.

5. At the close of the testimony the defendant Prettyman moved the court to direct the jury to return a verdict that he was not guilty as charged in either count of the indictment. The motion was overruled. We shall first deal with the motion as it respects the charges made in the willful misapplication counts. In each of those counts, as we have seen, it is charged that the alleged willful misapplication of the money of the bank was made by Littich and Prettyman by the payment out of the funds of the bank of certain checks drawn upon it by the hosiery company when the latter had no money in the bank to its credit and when its account had already been overdrawn. The testimony clearly showed that Littich paid out the money but failed to show that Prettyman was in any wise connected with either of the

checks so paid, or that he paid or directed the payment of either of them, or that he participated in either of the transactions. It equally fails to show that the application of any part of the money paid upon the checks was made by Prettyman himself or by his consent, direction, or knowledge. Having regard to the essential elements of the offense charged against Prettyman, it is entirely clear that, if there were any willful misapplication of any part of the money which went to the payment of any of the checks, it was not the act of Prettyman. To constitute the offense of willful misapplication of the funds of a national bank, there must in fact be an application of those funds by the person charged, the application must be an unlawful one and must have been made by the accused with the intent to injure and defraud the bank. The testimony being such as we have indicated, a verdict in Prettyman's favor should have been directed by the court upon the first 11 counts.

6. The defendants Jacob and Abe Kapner also moved the court to direct their acquittal on the willful misapplication counts; but the court overruled the motion. The testimony showed that all the checks described in those counts were drawn by the hosiery company acting through one or the other of the Kapners who were its officers, and that some if not all of the checks were drawn when the account of the company had been overdrawn and when the company was in fact unable, though yet a going concern, to pay its debts. The checks were nevertheless paid by Littich, the cashier, out of the bank's funds. There was testimony tending to show that some, at least, of the checks were paid in the hope of keeping the hosiery company on its feet so that it might ultimately be able to pay its indebtedness to the bank. We have held that the testimony did not warrant the conviction of Prettyman; but it does not follow that it was error to overrule the motion of the Kapners. If we eliminate Prettyman and consider these counts as though only Littich and the Kapners were concerned, we find under the authorities that the essential elements of the charges made in them are: (1) That there were willful misapplications in favor of the hosiery company of the funds of the bank by Littich, its cashier; (2) that such misapplications by him of the bank's funds were for purposes that were unlawful; (3) that the respective misapplications were made by Littich with the intent on his part to injure and defraud the bank; and (4) that the Kapners with intent to injure and defraud the bank aided and abetted Littich in all the alleged willful misapplications. United States v. Britton, 107 U. S. 669, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Northway, 120 U. S. 332, 7 Sup. Ct. 580, 30 L. Ed. 664; Batchelor v. United States, 156 U. S. 429, 15 Sup. Ct. 446, 39 L. Ed. 478; Rieger v. United States, 107 Fed. 926, 47 C. C. A. 61.

While, as was held by this court in Flickinger v. United States, 150 Fed. 1, 79 C. C. A. 515, the payment of overdrafts by an officer of a national bank, under circumstances such as appeared there, is an offense under section 5209, a different result must follow, if, when the overdrafts are paid, there was lacking the element of willful misapplication to an unlawful purpose of the money of the bank or the in-

tent upon the part of the bank's officer to injure and defraud it by such payments

If we assume, as we think we must, without otherwise expressing an opinion upon it, that the testimony in some degree tended on one hand to prove the existence of each of the elements of the offenses charged, and on the other that it tended to show that payment of the checks was induced by other motives than to injure and defraud the bank, then, although the burden rested on the government to prove beyond a reasonable doubt the intent to injure and defraud the bank, there was a question for the jury to determine, and it was not error to overrule the motion of the Kapners.

7. Each of the defendants moved the court to direct a verdict of not guilty as charged in the thirteenth or mortgage count. The testimony plainly showed that by July, 1907, the hosiery company owed the bank over $77,500; that after many consultations between it and the bank, and after efforts to raise the money to pay or to reduce the indebtedness had failed, a mortgage upon all its property was given by the hosiery company to E. P. O'Neal, as trustee, to secure that and certain other indebtedness for which new notes were given; that the bank agreed to the making of the mortgage; that it accepted it after it was made; that it was executed by the hosiery company upon the advice of O'Neal, who was the bank's attorney, to whom as trustee the mortgage was made; and that the individual sureties or indorsers upon some of the old paper which was then surrendered by the bank were practically insolvent at the time. Briefly stated, the count charges the alleged willful misapplication as follows: (1) That on August 21, 1907, while the hosiery company was indebted to the bank in the sum of $77,566.56 upon various notes which are described it, with the assistance and influence of Littich and Prettyman, procured an additional loan of $5,500. (2) That on that day certain drafts of the hosiery company on Rieger, Kapner & Altmark, each of which had been credited by the bank to the hosiery company and payment of which had been refused by the drawees and had been protested and returned to the bank and were in its hands in the aggregate amount of $5,950, remained unpaid. (3) That on that date a certain check of the hosiery company on the Old Citizens' National Bank of Zanesville, Ohio, for $3,000, and for which the First National of Dresden had on August 16th given credit to the hosiery company, was unpaid and protested and had been returned to the latter bank, and that another check of the hosiery company upon the bank for $2,600 had been presented by the hosiery company and had on August 21st been paid by the bank through the influence of Littich and Prettyman. It is alleged that on the date of these transactions the mortgage was executed and delivered, and that all of the notes of the hosiery company were surrendered without consideration, and that the drafts and checks were paid when the hosiery company had nothing to its credit and was insolvent. Upon these matters we think it will suffice to say that the indebtedness of the hosiery company to the bank covered by the mortgage was better secured by it than it had been before, that the prior overdrafts were covered by the mortgage, and that the new overdrafts

were less than those previously existing. (4) That the additional loan was secured by a deposit of other collateral. We think the allegations of this count were not sustained by substantial testimony, and that it was error to overrule the several motions of the defendants to direct a verdict of not guilty upon the thirteenth count.

8. We come now to questions somewhat more difficult which arise upon the fourteenth or conspiracy count. Section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), upon which it is based, reads thus:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

The count charges that the defendants conspired to violate section 5209 of the Revised Statutes of the United States by willfully misapplying the money, funds, and credits of the First National Bank of Dresden, Ohio, with intent to injure and defraud it by converting the said money, funds, and credits to the use of the Kapner Bros. & Duga Hosiery Company and other persons unknown.

The count also alleges in detail the means by which the defendants were to carry into effect their alleged conspiracy. It is charged that Prettyman was vice president of the bank and president of the woolen company; that Jacob Kapner was president of the hosiery company, and a large holder of the stock in the woolen company; that he was principal owner in the partnership of Rieger, Kapner & Altmark, of New York, which was the selling agent of the hosiery company; and that Abe Kapner was the secretary and active manager of the hosiery company and was also connected in some unknown way with the partnership of Rieger, Kapner & Altmark. It is alleged that the defendants intended to willfully misapply the moneys, funds, and credits of the bank to the use of the hosiery company with intent to injure and defraud it: (a) By procuring and causing large overdrafts upon the hosiery company's account, when it had no funds to its credit, and was not entitled to draw upon the bank to which it was then indebted in the sum of $108,000 or more, and was unable to pay its debts; (b) by procuring and causing the bank to make large loans to the hosiery company either upon its own paper or upon paper indorsed by other persons, viz., the woolen company, which last company was then indebted to the bank in a sum exceeding its total assets, and also upon the paper of Kapner Bros. & Rieger, Kapner & Altmark, and afterwards to release said makers and indorsers without consideration; and (c) by causing and permitting the hosiery company to deposit with the bank and to receive credit on its books for the sum of certain drafts upon Rieger, Kapner & Altmark under the pretense that said drafts were drawn upon actual value secured thereby and were in fact commercial paper, whereas in truth and in fact said drafts were not drawn against values of any kind, but were purely fictitious and were drawn for the purpose of getting credit with the bank to which the hosiery company

was not entitled and thereby to injure the association. It is averred that by these means and devices the defendants intended to cause a great loss in money and securities to the bank, and to withdraw from it all the funds and moneys that could by those means be obtained and to appropriate the same to the use of the hosiery company which was then insolvent and indebted to the bank in said sum of $108,000, but that its total assets were of the value of less than $50,000.

After stating the general charge and specifications as we have given them, it is averred:

"That in order to execute, carry out and effect the object of said conspiracy, said Abe Kapner, on, to wit, the eleventh day of May, in the year of our Lord one thousand nine hundred and seven, at the county of Muskingum, in the state of Ohio, in the Circuit and Eastern Division of the district aforesaid, and within the jurisdiction of this court, did draw a certain draft upon Rieger, Kapner & Altmark, in the words and figures following, to wit:

" 'Dresden, O., May 11, 1907.                                    $5,000.00
" 'At sixty days sight, pay to the order of ourselves, five thousand dollars.
                        " 'The Kapner Bros. & Duga Hosiery Company,
                                                        " 'Abe Kapner.
" 'To Rieger, Kapner & Altmark, 43 Leonard Street, New York.'

"And did present said draft to the said Banking Association and obtain credit for the same on the said 11th day of May, 1907; and the said Abe Kapner, on the said 11th day of May, 1907, did 'write upon the face of said draft the following acceptance, to wit: 'Accepted, Rieger, Kapner & Altmark, Abe Kapner, payable, First National Bank, Dresden, Ohio.' And on the same day and at the same time did indorse said draft: 'The Kapner Bros. & Duga Hosiery company, Abe Kapner.' "

9. The defendants demurred to this count upon the ground that it is not averred therein that there was any infirmity connected with the draft, nor that the credit obtained thereon was used, nor that the draft was not paid when it matured, nor that the bank lost anything by reason of giving credit thereon. The allegations in respect to this phase of the offense charged possibly are meager, and we are not unmindful in this connection of the general rule of criminal pleading which requires that all the essential elements of an offense shall be explicitly set forth so that the accused may be informed of what is to be proved against him, and thus be given an opportunity to meet it; but the count does in substance allege that in order to effect the object of the conspiracy Abe Kapner, one of the parties to it, drew and accepted the draft, presented it to the bank, and obtained credit for the amount for the hosiery company. We think this sufficiently charges that an act was done by one of the parties to the alleged conspiracy to effect the object thereof and sufficiently identifies and specifies what that act was. Greater particularity in this respect does not seem to be necessary under section 5440. There was no error in overruling the demurrer.

10. The defendants moved the court to direct their acquittal on this count, the motion was overruled, and error is assigned upon this ruling.

The pleas of not guilty put in issue every allegation in the count, and put upon the government in the amplest way the burden of proving every essential element of the offense charged. Speaking generally, those elements were: (1) Whether there was a conspiracy between the defendants, Littich, Prettyman, Jacob Kapner, and Abe Kapner, to willfully misapply the moneys, funds, and credits of the bank to the

use of the hosiery company with intent to injure and defraud the bank in the ways and by the means set forth in the count; and (2) whether the acts of Abe Kapner in drawing and accepting, in behalf of the hosiery company, the draft dated May 11, 1907, and in depositing it in the bank and obtaining credit therefor in the company's account were acts done by him to effect the objects of the conspiracy. The issues formed by the plea of not guilty made it indispensable for the government to establish beyond a reasonable doubt three propositions, viz.: (1) That the conspiracy as alleged was entered into; (2) that Abe Kapner was a party to it; and (3) that the acts referred to were done by him to effect the objects of the conspiracy. A failure of proof in respect to either of these propositions would necessarily be fatal to the prosecution.

In Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419, a conspiracy was defined to be a combination between two or more persons by concerted action to accomplish a criminal or unlawful purpose, and in United States v. Hirsch, 100 U. S. 33, 25 L. Ed. 539, it was held that the gravamen of an offense under section 5440 of the Revised Statutes was the conspiracy which was described as being "the combination of minds in an unlawful purpose." Of course the combination to accomplish a criminal design by concerted action need not be agreed upon in express language. A tacit understanding between parties may be quite sufficient and may be shown by proof of circumstances which fairly tend to indicate its existence; but in this case, as in all others where a conspiracy is charged, it is indispensable that in some way the existence of the alleged combination or agreement should be established by the testimony beyond a reasonable doubt. In Union Pacific Coal Co. v. United States, 173 Fed., at page 740, 97 C. C. A., at page 581, the Circuit Court of Appeals of the Eighth Circuit, speaking through Judge Sanborn, said:

"There was a legal presumption that each of the defendants was innocent until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence of facts that are as consistent with innocence as with guilt is not sufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused."

Under section 5209 of the Revised Statutes the offense of willfully misapplying the money or funds of a national bank with intent to injure and defraud it can only be committed by an officer or agent of the bank, and we think, under the count now being considered, that it would have been sufficient to show an agreement to commit that offense made either between Littich, the cashier, and the Kapners, or either of them, or one made between the latter and Prettyman, the vice president of the bank, or one made between all of the defendants. The record before us is very voluminous, but has been repeatedly examined with great care. It would extend this opinion beyond reasonable limits to go into its details or to discuss minutely its separate features. Under these circumstances, we are content to say that a majority of the court are not prepared to hold as matter of law that there was no substantial testimony tending to support the charge of conspiracy, nor, as

matter of law, that there was no substantial testimony tending to show that the making of the $5,000 draft in question was an overt act in furtherance of the alleged conspiracy. The writer, however, has reached the conclusion: (1) That there is no substantial testimony to sustain the allegations of the count as to the conspiracy; and (2) that there is no substantial testimony to show that the alleged overt act was done to effect the object of any conspiracy. The averment is that the $5,000 draft was drawn to effect the objects of the conspiracy, but he thinks the uncontradicted testimony shows that the purpose of making that draft was to pay or renew a pre-existing indebtedness of long standing. He thinks there was no substantial testimony to show the contrary, and that this purpose being positively proved by the oaths of Littich and Abe Kapner, the two active participants in the transaction, excludes any other hypothesis in the absence of a showing by adequate testimony, positive or circumstantial, that the purpose of the act was otherwise. He thinks that the alleged intent should be proved by evidence of facts which are more consistent with guilt than with innocence before there could be a conviction.

The opinion of the majority of the court on the motion being as stated, it appears that it was not erroneous to overrule the motions to direct an acquittal on the fourteenth count.

We have not deemed it necessary to notice the other numerous errors assigned.

For the reasons indicated, the judgments will be reversed, with directions to award a new trial and for further proceedings according to law.