UNITED STATES v. HIGGINS et al.

(District Court, W. D. Kentucky. March 15, 1912.)

Post Office (§ 33*)—"Nonmailable Matter"—Newspaper Without Wrapper.

    A newspaper without a wrapper, the address being written on the paper itself, though containing scurrilous and defamatory matter, marked with blue pencil and so folded as to expose the same to view, is not "nonmailable matter," within Cr. Code (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1909, p. 1454]) § 212, which provides that all matter otherwise mailable, on the "envelope or outside cover or wrap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

per" of which language of a libelous or scurrilous character may be written, is nonmailable, and which prohibits the sending thereof through the mails.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 53; Dec. Dig. § 33.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

Criminal prosecution by the United States against William M. Higgins and J. J. Barry. Motion for a directed verdict for defendants granted.

George Du Relle, U. S. Dist. Atty.
W. M. Smith, for defendants.

EVANS, District Judge. The testimony having all been heard, the defendants have moved the court to charge the jury to return a verdict of not guilty. The question thus raised is interesting and important, and, as·we shall see, has two sides to it. The indictment charges that the defendants—

"unlawfully did knowingly deposit and cause to be deposited in the post office of the United States at Louisville, Kentucky, for mailing and delivery, a certain copy of a newspaper publication then and there entitled 'Kentucky Irish-American,' bearing the date of Saturday, April 15, 1911, which said newspaper was then and there matter mailable. by law otherwise than as hereinafter charged, upon the outside cover of which said newspaper was then and there printed and apparent language of a scurrilous and defamatory character, and calculated by its terms and manner of display and obviously intended to reflect injuriously upon the character and ·conduct of one D. E. O'Sullivan, which said copy of said newspaper was then and there addressed to Walter E. Huffaker, Paul Jones Building, and said language on the outside cover of said newspaper was then and there in part of the tenor following, to wit:

" 'SHAME

" 'Will Come upon the Irish-Americans if They Back O'Sullivan's Opinion.

" 'Wanton Attack upon Useful Citizens Made by Former Editor. Master of Blackguardism Dares to Assail Men of Better Reputation.

" 'Story of Base Ingratitude.

" 'Daniel E. O'Sullivan, the erstwhile editor of the Critic and of the later O'Sullivan's Opinion, went out of his way last week to attack the Whalens. It was not a physical attack. It was one of those long-distance ambush affairs, via the columns of a newspaper. Mr. O'Sullivan is noted for dipping his pen into vitriol when he writes and he has been writing for more than twenty years. He has some gifts. He has mentality. He has read some books. He has circulated in society in Louisville and elsewhere in the state and country. He came of honest parents. They gave Daniel every possible educational advantage. Yet he has been tried and found wanting in every stage of his life. He has no sense of gratitude. The ingrate is worse than the man who kills in the heat of passion.

" 'Just as charity is the greatest of all virtues, so is ingratitude the worst of vices. Give a dog a bone and he will be your friend. Not so with Dan.' "

The charge thus made is based upon section 212 of the Criminal Code of the United States (35 Stat. 1129), which is in this language:

"All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any delineations,

epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office nor by any letter carrier, and shall be withdrawn from the mails under such regulations as the Postmaster General shall prescribe. Whoever shall knowingly deposit or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable matter, or shall knowingly take the same or cause the same to be taken from the mails for the purpose of circulating or disposing of or aiding in the circulation or disposition of the same, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

The matter was, upon its face, undoubtedly scurrilous and defamatory. The uncontradicted testimony leaves no room for dispute, first, that it was calculated by its manner and style of display, and indeed was obviously intended to reflect injuriously upon the character and conduct of O'Sullivan; second, that it was printed with large headlines on the first or front page of the newspaper publication entitled "Kentucky Irish-American"; third, that on each side at the top of the headlines cross-marks in blue pencil were placed; fourth, that copies of the newspaper were, perhaps inevitably, so folded as to bring the matter set forth in the indictment to the outside; fifth, that on the margin of the newspaper itself, as thus folded, and on that part of each copy of it which contained the matter referred to, the respective names and addresses were written of the persons to whom copies of the paper were to be sent; sixth, that in this shape and without any envelope, wrapper, or other separate covering of any sort the newspapers were sent in bulk to the post office in this city, and were there by the defendants caused to be deposited in the post office for mailing and delivery to the several persons to whom they were respectively addressed; and, eighth, that in the form indicated and with the matter referred to so marked and placed in plain view on the outside of the newspaper, the papers were handled by the employés of the post office, and in that condition were by them delivered to the various persons to whom copies were respectively addressed.

Under this state of fact the only question to be determined is, Was the newspaper so folded and with the objectionable matter so marked and exposed "nonmailable matter" within the statutory provision we have copied? The solution of the question depends upon the proper interpretation of those words of the section which read, "matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which" the objectionable matter may be found. May the newspaper itself be properly regarded as the "envelope, outside cover or wrapper," within the meaning of those words of the statute? In this case the testimony is uncontradicted that neither an "envelope" nor a "wrapper" was used. Could the newspaper itself, which was otherwise mailable, be its own "outside cover" within the meaning of the statute which uses that phrase in close collocation with the words "envelope" and "wrapper," both of which can only refer to separate coverings for the matter mailed? Neither the attorneys nor the court

have been able to find more than two cases in which the question has been adjudicated. Both are directly in point. One of them was United States v. Gee (D. C.) 45 Fed. 194, in which Judge Severens, then a District Judge, held:

"That this section of the statute applies only to matter exhibited upon an inclosing wrapper or cover, and not to matter which is contained in the body of the thing mailed; that, the statute being one constituting a criminal offense, it cannot be extended by construction to cases where there is no wrapper or cover at all, even though such cases may be within the reason and policy of the enactment."

The other case was United States v. Burnell (D. C.) 75 Fed. 824, in which Judge Woolson, in an opinion of some elaboration, held directly to the contrary, and distinctly expressed his dissent from the conclusion reached by Judge Severens in the Gee Case. After discussing the meaning of the word "cover," Judge Woolson said:

"Congress has enacted this statute. It in no wise affords a person assailed through a paper or pamphlet redress for injuries or damages thereby suffered. The determination of such questions is properly left with the state or other courts, under other and different proceedings. But at the date of the enactment of the present statute there existed an evil against which this statute was expressly aimed. The mails of the country were used for the carriage of scurrilous and defamatory, etc., matter, which was so mailed as to be exposed to the eyes of the employés in the Post Office Department. This was the mischief to remedy which Congress legislated. It has not declared that such matter shall not be carried in the mails. Whether such a widespread or flagrant abuse of the mails may be at any time occasioned by mailing of such publications, and when, as that the mails shall be entirely closed to them, is for Congress to determine. As this statute now stands, defendant is not liable thereunder, except when, by his method of sending his paper through the mails, he shall so expose the objectionable matter on the 'envelope, outside cover or wrapper.' The abuse of the mails which brought this statute into existence is clearly apparent. The mischief sought thereby to be remedied exists in the Interstate Tracer in evidence, as mailed by defendant."

It may be that the object Congress had in view was, at least in part, what Judge Woolson imputes to it. At the same time it may be that Congress had other objects in view at that time, and certainly it may have had other objects in view when, long afterwards, it enacted section 212. But, however this may be, the meaning of the language of the statute we have quoted is the thing to be ascertained, and the ambiguousness of the words used makes a resort to interpretation inevitable. It will be seen that when Judge Severens was endeavoring to ascertain the meaning and intention of the statute (the one he was construing, so far as the question before us is concerned, being similar to section 212) he thought the intention of Congress would be clear if the word "inclosing" were supplied, thus showing the meaning of the language to be the same as it would have been had Congress said "envelope, outside inclosing cover or wrapper," etc.

When Judge Woolson in the Burnell Case had before him the same statute, he seems to have concluded (though he does not in terms say so) that the best way to get at the intention of Congress and to meet the evils it had in view was practically to eliminate the word "cover," and thus in effect have the clause read on the "envelope, outside, or

wrapper," of the matter mailed. Whether the theoretic insertion of one word or the theoretic elimination of another, for the purpose of aiding construction, would better disclose the real meaning of the statute may, and indeed does, admit of doubt, when we compare the views of the two judges referred to, one of whom was later a distinguished Circuit Judge for many years. While not myself coming to a definite or final conclusion upon the question, in view of the association of the words "envelope, outside cover or wrapper," I have greatly inclined, upon consideration of the maxim ejusdem generis, to agree with Judge Severens. Should we not hold that Congress was dealing exclusively with the outside thing which contained the matter to be mailed, whether that containing thing was called an "envelope," a "wrapper," or an "outside cover"? Coupling, as the statute does, the word "cover" with the word "outside," and collocating both with the words "envelope" and "wrapper" (the meaning and use of which are well known), seems to be very suggestive, if not persuasive, that Judge Severens was right. Was not Congress dealing with the subject of placing the objectionable matter on any sort of separate covering for the thing sent, rather than the exposure of the objectionable words otherwise? Judge Severens took the first view indicated by this question. Judge Woolson took the other.

Although the conflict of judicial opinion manifested in the Gee and Burnell Cases had arisen long before the enactment of the Criminal Code, Congress left the provision as it is found in section 212. In this situation I have turned for guidance to the rule announced by the Supreme Court in United States v. Brewer, 139 U. S. page 288, 11 Sup. Ct. 541, 35 L. Ed. 190, where it was said:

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. United States v. Sharp, Pet. C. C. 118 [Fed. Cas. No. 16,264]. Before a man can be punished, his case must be plainly and unmistakably within the statute."

The rule thus expressed should, we think, be our guide in such cases. See Prettyman v. United States, 180 Fed. 34, 103 C. C. A. 384, and United States v. McClarty (D. C.) 191 Fed. 518, 522.

For the reason thus indicated, and because the case does not plainly and unmistakably come within section 212, supra, I shall sustain the motion of the defendants, and direct the jury to find the defendants not guilty.